MARVIN FABRIKANT AND WIFE, PATRICIA A. FABRIKANT, ARTHUR C. SMITH, III, AND MPF INVESTMENT CO., L.P., AND ARTHUR C. SMITH, III, TRUSTEE, ARTHUR C. SMITH III REVOCABLE TRUST, PLAINTIFFS v. CURRITUCK COUNTY, A NORTH CAROLINA BODY POLITIC AND CORPORATE, COROLLA ASSOCIATES, A VIRGINIA LIMITED PARTNERSHIP, WHALEHEAD ASSOCIATES, A VIRGINIA LIMITED PARTNERSHIP, H I S WHALEHEAD, A VIRGINIA LIMITED PARTNERSHIP, GERALD J. FRIEDMAN, WHALEHEAD PROPERTIES, A VIRGINIA JOINT VENTURE, NANCY FRIEDMAN, ESTATE OF SAMUEL SANDLER, DECEASED, HARRY SANDLER, STATE OF NORTH CAROLINA, NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, COASTAL RESOURCES COMMISSION, DIVISION OF COASTAL MANAGEMENT, AND DONNA D. MOFFITT, AS DIRECTOR OF THE DIVISION OF COASTAL MANAGEMENT, DEFENDANTS

No. COA04-250

(Filed 18 October 2005)

**1. Appeal and Error— appealability—dismissal of claims— certification—final judgments on some claims**

The trial court's dismissal of five of twenty-three claims was interlocutory but properly before the Court of Appeals because the trial court included a Rule 54(b) certification and the dismissals were final judgments.

FABRIKANT v. CURRITUCK CTY.

[174 N.C. App. 30 (2005)]

**2. Immunity— governmental—waiver—pleadings**

Waiver of governmental immunity must be specifically alleged, but precise language is not necessary as long as sufficient allegations are present to provide a reasonable forecast of waiver. The determination is limited to the complaint and its attachments.

**3. Immunity— governmental—action for injunction—trespass on beachfront land**

*Shingleton v. State*, 260 N.C. 451, precluded plaintiffs' argument that sovereign immunity was waived by N.C.G.S. § 41-10.1 for a claim for an injunction restraining interference by the State with plaintiffs' exclusive use of beachfront property. Property owners cannot maintain an action against the State to restrain the commission of a tort where they cannot maintain the action in tort. Plaintiffs could have brought individual capacity claims against State officers, but did not.

**4. Immunity— governmental—beachfront land—quiet title action—no claim of title**

Plaintiffs failed to allege facts sufficient to constitute a waiver of the State's sovereign immunity under N.C.G.S. § 41-10.1 and their claim to quiet title to the dry sand area in front of beachfront property was properly dismissed.

**5. Declaratory Judgments— pleadings—actual controversy required—only complaint considered**

Jurisdiction to render a declaratory judgment exists only when the complaint demonstrates an actual controversy. The answer and the course of multi-claim litigation are not considered.

**6. Declaratory Judgments— allegations—justiciable controversy**

A declaratory judgment seeking an interpretation of the public trust doctrine as applied to dry sand beach areas was properly dismissed because plaintiffs did not allege a justiciable controversy. Plaintiffs alleged at most a statement by a single State official asserting a standard that he applied generally, but which has not been applied to plaintiffs' property.

**7. Constitutional Law— taking of dry sand beach—underlying claims dismissed**

Claims for an unconstitutional taking regarding the "dry sand area" of a beach were not addressed where the under-

lying claims to quiet title and declaratory relief were properly dismissed.

**8. Appeal and Error— invited error—no supporting authority**

Plaintiffs were not entitled to the "stipulated dismissal" of an amended takings claim rather than a dismissal on the merits where they gave the court the option of outright dismissal. Further, they cited no authority in support of their argument.

Appeal by plaintiffs from orders entered 22 July 2003 by Judge J. Richard Parker in Currituck County Superior Court. Heard in the Court of Appeals 20 October 2004.

*Huff, Poole & Mahoney, PC, by J. Bryan Plumlee; Carter, Archie & Hassell LLP, by Sid Hassell; and David J. Bederman, pro hac vice, for plaintiffs-appellants.*

*Attorney General Roy C. Cooper, by Special Deputy Attorney General Ronald M. Marquette, Special Deputy Attorney General J. Allen Jernigan, Assistant Attorney General Marc D. Bernstein, and Assistant Attorney General Meredith Jo Alcoke, for the State.*

GEER, Judge.

Plaintiffs, who own oceanfront property in Currituck County, brought suit against various defendants, including the State of North Carolina, the North Carolina Department of Environment and Natural Resources ("DENR"), the Coastal Resources Commission, the Division of Coastal Management, and the Director of the Division of Coastal Management (collectively "the State defendants"). With respect to the State defendants, plaintiffs have sought (1) a declaratory judgment that they have exclusive ownership of the portion of the beach between the high tide mark and the vegetation line, identified as "the dry sand beach," (2) to quiet title in that portion of the beach, and (3) injunctive relief. Because we hold that the quiet title and injunctive relief claims are barred by sovereign immunity and that there is no justiciable controversy with respect to the declaratory judgment claim, we affirm the trial court's orders dismissing plaintiffs' claims against the State defendants.

## Facts

The beach community known as Whalehead Club is located in Currituck County near Corolla, North Carolina. Plaintiffs each own

property at Whalehead. At the heart of plaintiffs' claims are their contentions regarding ownership of various parts of the beach that Whalehead borders. The beach adjacent to the Atlantic Ocean along North Carolina's Outer Banks is generally identified as having three "zones." These zones are (1) the "wet sand beach," which is the area "subject to regular flooding by tides," N.C. Gen. Stat. § 77-20(e) (2003); (2) the "dry sand beach," which is the area "subject to occasional flooding by tides, including wind tides other than those resulting from a hurricane or tropical storm," *id.*; and (3) the area landward of the dry sand beach. The debate in this case concerns the dry sand beach.[1]

On 19 September 1997, several property owners in Whalehead filed a lawsuit in the United States District Court for the Eastern District of North Carolina against various defendants, among them Currituck County, the North Carolina Department of Transportation ("DOT"), and the North Carolina Board of Transportation ("BOT"). Although the record before this Court does not contain the federal court complaint, the record indicates the complaint alleged that the Whalehead beach was private property and that the County and DOT injured plaintiffs by encouraging public access to the ocean and beach areas.

DOT and BOT filed a motion to dismiss, based on (1) lack of diversity of citizenship, (2) failure to join the State of North Carolina and DENR as necessary parties, and (3) immunity under the Eleventh Amendment to the United States Constitution. In support of the motion, DOT and BOT filed the affidavit of Roger N. Schecter, then Director of the Division of Coastal Management, a division within DENR.

Following the filing of defendants' motion to dismiss, plaintiffs voluntarily dismissed the federal lawsuit and filed this action in Currituck County Superior Court on 19 June 1998. Plaintiffs included as defendants the developer of Whalehead, general partners of the developer, the original owners of the undeveloped Outer Banks property that became Whalehead, and Currituck County. Plaintiffs also

---

1. For a description of many of the underlying substantive issues in this lawsuit, see generally Joseph J. Kalo, *The Changing Face of the Shoreline: Public and Private Rights to the Natural and Nourished Dry Sand Beaches of North Carolina*, 78 N.C. L. Rev. 1869 (2000). The precise boundaries, and, indeed existence, of the beach "zones" are in contention, and many issues relating to the ownership of North Carolina's beaches have not yet been fully litigated below and are not properly before us at this time. Therefore, we explicitly refrain from expressing any opinion as to such issues.

sued the State of North Carolina, DOT, BOT, DENR, the Coastal Resources Commission, the Division of Coastal Management, and Roger N. Schecter "as Director of the Division of Coastal Management." The complaint identifies the latter defendants collectively as the "State Defendants."

Plaintiffs' complaint alleges that plaintiffs purchased their property based on representations indicating that the Whalehead beach would be private, secluded, and remote. Plaintiffs also allege that they were told that the property lines for the oceanfront lots stretched to the mean high tide line. Restrictive covenants provided that the lots in the section where plaintiffs purchased their property could only be used for residential purposes.

According to the complaint, the original developers conveyed to Currituck County several oceanfront lots in the "residential purposes only" section. After the County paved those lots, the developer assured Whalehead residents that the paved lots were for the exclusive use of Whalehead residents and their guests. In 1995, however, Currituck County erected signs that indicated the paved lots were for public parking.

In addition, the complaint alleges that access ramps or walkways stretching from a Whalehead road to the vegetation line on the beach were constructed on 10-foot-wide strips of land that were owned by the developer. Signs also appeared at intervals along the easternmost north-south road in Whalehead identifying these ramps and walkways as providing "Public Beach Access." Plaintiffs allege "upon information and belief" that the ramps or walkways and the signs were constructed by the State defendants, the developer, or the County and that they were funded by the State.

With respect to the effect of the provision of public access, the complaint alleges:

104. As a result of the pedestrian boardwalks, including their failure to extend to the mean high-tide line, persons using the boardwalks have a greater incentive to stray across the adjacent private beachfront lots to reach the beach area between the mean high-tide line and the mean low-tide line.

105. Members of the general public, on a non-continuing and recurring basis, and mostly during the tourist season, use the [access areas] without authorization to trespass on the private property of the Plaintiffs owning beachfront lots and other beach-

FABRIKANT v. CURRITUCK CTY.

[174 N.C. App. 30 (2005)]

front lot owners, particularly on the Dry Sand Areas of such private property at which the pedestrian boardwalks terminate.

Plaintiffs describe various negative conduct resulting from the public's use of the dry sand beach in front of their homes, including litter, noise, bonfires, relief of bodily functions, requests for use of the bathroom and the telephone, and unauthorized use of plaintiffs' outdoor showers.

Based on the above allegations, plaintiffs asserted 22 claims for relief, including claims for breach of the restrictive covenants, deeds, and contracts; fraud; unfair and deceptive trade practices; and various claims relating to the maintenance of dumpsters, streets, and water supply facilities. With respect to "the State defendants," the complaint included four claims for relief. Plaintiffs first sought a declaratory judgment that the State of North Carolina and/or the public have no rights as to the dry sand beach, which plaintiffs contend is under their private ownership. Second, plaintiffs asserted a cause of action to quiet title in the dry sand beach. Third, plaintiffs requested an injunction restraining the State defendants from "interfering with these Plaintiffs' exclusive use and enjoyment of their real property, specifically the Dry Sand Areas." In the event title to the dry sand beach was not found to reside in plaintiffs, plaintiffs alternatively alleged that such a ruling would constitute a "taking" entitling plaintiffs to compensation for the land itself and for the accompanying diminution in property values.

Plaintiffs subsequently obtained leave to amend their complaint to add a fifth claim against the State defendants asserting the unconstitutionality of N.C. Gen. Stat. §§ 77-20(d) & (e) (2003), two provisions adopted after the filing of the federal action that codify the "customary free use and enjoyment of the ocean beaches" enjoyed by the people of the State of North Carolina "from time immemorial." N.C. Gen. Stat. § 77-20(d). In both the State defendants' answer to the original complaint and their answer to the amendment, they included motions to dismiss.

On 28 April 1999, upon motion by DENR, the Division of Coastal Management, and the Coastal Resources Commission, the trial court dismissed the quiet title, injunctive relief, and taking claims of those plaintiffs who did not own oceanfront property. Further, the court ruled that "all claims for relief relating to ownership and use of the ocean beach, including the Eighth Claim for Relief alleging a judicial 'taking', are DISMISSED with respect to all Plaintiffs as to lands situ-

ated seaward of the mean high water or mean high tide line of the Atlantic Ocean. This order is entered without prejudice to the . . . Defendants [sic] right to offer the same or similar arguments in support of any future motions . . . ." Plaintiffs have not appealed this order.

On 24 July 2002, the State defendants filed a motion for judgment on the pleadings as to plaintiffs' taking claim and their claim that N.C. Gen. Stat. §§ 77-20(d) and (e) are unconstitutional. On 9 September 2002, the State defendants also moved to dismiss the quiet title, declaratory judgment, and injunctive relief claims for lack of subject matter jurisdiction based on sovereign immunity and the absence of a justiciable controversy.

The trial court entered two orders on 22 July 2003, one addressing each motion. At this point, because of voluntary dismissals, the only remaining plaintiffs were Marvin and Patricia Fabrikant and Arthur C. Smith, III. Two additional plaintiffs had been added: MPF Investment Co., L.P. and the Arthur C. Smith III Revocable Trust. The first order dismissed plaintiffs' quiet title, declaratory judgment, and injunctive relief claims on the basis of sovereign immunity. The second order granted the motion for judgment on the pleadings as to plaintiffs' remaining two claims. Both orders included a certification from the trial court, pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, stating: "There is no just cause for delay in the entry of a final judgment as to these claims." Plaintiffs appealed from both 22 July 2003 orders.

[1] We first observe that this appeal is interlocutory. The trial court's two 22 July 2003 orders dismissed only five of plaintiffs' 23 claims, leaving the remaining 18 claims pending. " 'An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.' " *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001) (quoting *Veazey v. Durham*, 231 N.C. 354, 361-62, 57 S.E.2d 375, 381 (1950) (citations omitted in original)). This Court must, as an initial matter, determine whether the appeal is properly before the Court.

An interlocutory appeal is ordinarily permissible only if (1) the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review. *Id.* at 164-65, 545 S.E.2d at 261. Here,

the trial court included a Rule 54(b) certification in both of its orders. "When the trial court certifies its order for immediate appeal under Rule 54(b), appellate review is mandatory. Nonetheless, the trial court may not, by certification, render its decree immediately appealable if '[it] is not a final judgment.' " *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (internal citations omitted) (quoting *Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983)). Since it is apparent that the dismissals of plaintiffs' five claims against the State defendants are final judgments, plaintiffs' appeal is properly before this Court.

### Injunctive Relief and Suit to Quiet Title

[2] The plaintiffs' sixth and seventh claims for relief are labeled in the complaint respectively: "Dry Sand Areas—Action to Quiet Title" and "Dry Sand Areas—Injunctive Relief." We hold that these two causes of action are barred because plaintiffs have failed to properly allege in their complaint the State's waiver of sovereign immunity.

"Sovereign immunity is a theory or defense established to protect a sovereign or state as well as its officials and agents from suit . . . when the agency or entity is being sued for the performance of a governmental function. It mandates that the state is immune from suit unless it expressly consents to be sued through a waiver . . . or, unless a statutory waiver of immunity applies." *Vest v. Easley*, 145 N.C. App. 70, 73, 549 S.E.2d 568, 572 (2001) (internal citations omitted). *See also Shingleton v. State*, 260 N.C. 451, 458, 133 S.E.2d 183, 188 (1963) (holding that sovereign immunity precluded the trial court from granting an injunction against the State with respect to a disputed easement).

In this case, plaintiffs have sued the State of North Carolina, DENR, the Coastal Resources Commission, the Division of Coastal Management, and the Director of the Division of Coastal Management.[2] Plaintiffs do not dispute the applicability of the doc-

---

2. The complaint originally named as a defendant Roger N. Schecter "as Director of the Division of Coastal Management." While the complaint does not specifically state whether Schechter was sued in his official or individual capacity, it is apparent from the nature of the claims, the relief sought, and the course of the proceedings that Schechter was sued only in his official capacity. *Mullis v. Sechrest*, 347 N.C. 548, 553-54, 495 S.E.2d 721, 723-24 (1998). We note that during the course of the litigation whenever the identity of the Director changed, the parties substituted the new Director as the defendant. *See* N.C.R. Civ. P. 25(f)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns or otherwise ceases to hold office, . . . his successor is automatically substituted as a party."). An official capacity suit, such as the one here, is "merely another way of pleading an action

trine of sovereign immunity to these defendants, but contend that immunity is waived by virtue of N.C. Gen. Stat. § 44-10.1 (2003) with respect to their "action to quiet title and related relief against the State Defendants."

Our Court has repeatedly held: "In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action." *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (internal citations omitted), *disc. review denied*, 357 N.C. 165, 580 S.E.2d 695 (2003). *See also Clark v. Burke County*, 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994) ("[A]bsent an allegation to the effect that [sovereign] immunity has been waived, the complaint fails to state a cause of action."). While this principle has been applied primarily in cases involving counties or municipalities, this Court held in *Vest*, 145 N.C. App. at 74, 549 S.E.2d at 573, that it is equally applicable in suits against the State and its agencies.

This requirement does not, however, mandate that a complaint use any particular language. Instead, consistent with the concept of notice pleading, a complaint need only allege facts that, if taken as true, are sufficient to establish a waiver by the State of sovereign immunity. *See Lynn v. Overlook Dev.*, 98 N.C. App. 75, 79, 389 S.E.2d 609, 612 (1990), *rev'd in part on other grounds*, 328 N.C. 689, 403 S.E.2d 469 (1991). A lack of specificity in this regard is not, however, fatal in the early stages of the proceedings. *Id.* In other words, as long as the complaint contains sufficient allegations to provide a reasonable forecast of waiver, precise language alleging that the State has waived the defense of sovereign immunity is not necessary.

Plaintiffs, however, urge this Court to look beyond the complaint. This Court has already rejected such an approach:

> Plaintiff contends that her failure to plead waiver of immunity through the purchase of liability insurance does not subject her claim to dismissal, and that it is sufficient to present such evidence at trial. She is wrong. . . . We [have] held that absent an allegation to the effect that immunity has been waived, the complaint fails to state a cause of action. Plaintiff's complaint does not satisfy these pleading requirements and the trial court properly

against the governmental entity." *Mullis*, 347 N.C. at 554, 495 S.E.2d at 725. In other words, any claim against Schecter in his official capacity is simply a claim against the State of North Carolina.

granted summary judgment for Burke County. Plaintiff also argues that the absence of the allegations of waiver is not fatal as long as evidence of waiver is present in the record. This Court addressed and rejected this argument in *Gunter v. Anders*, 115 N.C. App. 331, 444 S.E.2d 685 (1994) [,*disc. review denied*, 339 N.C. 612, 454 S.E.2d 250 (1995)].

*Clark*, 117 N.C. App. at 88-89, 450 S.E.2d at 748. Based on *Clark* and *Gunter*, we are limited to reviewing the complaint and its attachments to determine whether plaintiffs have alleged sufficient facts to establish a waiver by the State defendants of sovereign immunity.

N.C. Gen. Stat. § 41-10.1, upon which plaintiffs rely, provides:

Whenever the State of North Carolina or any agency or department thereof asserts a claim of title to land which has not been taken by condemnation and any individual, firm or corporation likewise asserts a claim of title to the said land, such individual, firm or corporation may bring an action in the superior court of the county in which the land lies against the State or such agency or department thereof for the purpose of determining such adverse claims. Provided, however, that this section shall not apply to lands which have been condemned or taken for use as roads or for public buildings.

Plaintiffs contend that their complaint's allegations fall within the scope of this statute, thereby establishing a waiver of sovereign immunity with respect to their quiet title claim and their request for injunctive relief.

[3] With respect to injunctive relief, plaintiffs' arguments are foreclosed by *Shingleton*. Although in *Shingleton*, our Supreme Court ultimately held that the plaintiff could proceed with a quiet title action under N.C. Gen. Stat. § 44-10.1, it specifically reversed the trial court's grant of injunctive relief: "The owner of property cannot maintain an action against the State or any agency of the State in tort for damages to property (except as provided by statute, G.S., Ch. 143, Art. 31). It follows that he cannot maintain an action against it to restrain the commission of a tort." *Shingleton*, 260 N.C. at 458, 133 S.E.2d at 188. The Court noted that the plaintiff was not without a remedy since he could sue the individual public officers:

When public officers whose duty it is to supervise and direct a State agency attempt or threaten to invade the property rights of a citizen in disregard of law, they are not relieved of responsibil-

ity by the immunity of the State from suit, even though they act or assume to act under the authority and pursuant to the directions of the State.

*Id.* The Court noted, however, that none of the officers were parties to that action. Likewise, in this case, plaintiffs have sued the Director of the Division of Coastal Management only in his or her official capacity, which is simply a claim against the State. *See Mullis,* 347 N.C. at 553-54, 495 S.E.2d at 725. We are bound by *Shingleton.* Since plaintiffs have not brought any individual capacity claims, *Shingleton* precludes their request for injunctive relief.

[4] With respect to the quiet title claim under N.C. Gen. Stat. § 41-10.1, we must decide whether plaintiffs' complaint alleges that the State has asserted "a claim of title to land" with respect to any property to which plaintiffs also claim title. It is well established that a "[w]aiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.,* 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983). In accordance with this principle, our Supreme Court has specifically held that the courts must "constru[e] N.C.G.S. § 41-10.1 strictly." *State v. Taylor,* 322 N.C. 433, 437, 368 S.E.2d 601, 603 (1988). The Court in *Taylor* concluded, therefore, that "the phrase 'claim of title to land' contained in N.C.G.S. § 41-10.1 cannot be broadened to include a claim for betterments under N.C.G.S. § 1-340." *Id.*

In comparison, in *Shingleton,* 260 N.C. at 458-59, 133 S.E.2d at 188-89, the Supreme Court held that an action against the State under N.C. Gen. Stat. § 41-10.1 could proceed when it arose out of conflicting claims relating to a recorded easement. The Court generally defined the meaning of "claim of title to land," observing: "Every right to land is a title. If a person has the actual or constructive possession of property, or the right of possession, he has a title thereto, though another person may be the owner." *Id.* at 459, 133 S.E.2d at 189.

In *Williams v. N.C. State Bd. of Educ.,* 266 N.C. 761, 764-66, 147 S.E.2d 381, 383-85 (1966), the Supreme Court further defined the scope of N.C. Gen. Stat. § 41-10.1. Although the plaintiffs and the State each claimed title to land on the basis of a recorded deed, the Court did not rest its holding that the plaintiffs could sue on that basis alone. Instead, the Court added:

As indicated above, it appears from the allegations of both plaintiffs and defendants that defendants do not assert they

have condemned the property. Nor do defendants assert owner-ship by virtue of their right of eminent domain or other attri-bute of sovereignty. Defendants' claims to ownership are based solely on rights and defenses available to private litigants in like circumstances.

*Id.* at 764-65, 147 S.E.2d at 383. *See also id.* at 767, 147 S.E.2d at 385 (in discussing the nature of the State defendants' defenses, empha-sizing that "the State and its agencies are asserting no rights deriving from their governmental status").

In the present case, plaintiffs' allegations establish that they are not basing their claim for injunctive relief and their suit to quiet title upon any formal claim of title, as the plaintiffs were in *Williams* and *Shingleton.* Instead, in support of their contention that the State defendants have asserted a "claim of title to land," plaintiffs point only to allegations that members of the general public trespass over the dry sand areas and that the Schechter affidavit filed in the federal litigation, which plaintiffs attached to the complaint, stated that Schechter interpreted the public trust doctrine to allow public access to the dry sand beach.

Plaintiffs cite no authority suggesting that trespassing by mem-bers of the public constitutes a "claim of title to land" by the State. Thus, plaintiffs' contention that N.C. Gen. Stat. § 44-10.1 applies rests solely on their allegations regarding the interpretation of the public trust doctrine contained in the Schechter affidavit.

The public trust doctrine is a common law principle providing that certain land associated with bodies of water is held in trust by the State for the benefit of the public. *State ex rel. Rohrer v. Credle,* 322 N.C. 522, 527-28, 369 S.E.2d 825, 828 (1988). As this Court has held, "public trust rights are 'those rights held in trust by the State for the use and benefit of the people of the State in common. . . . They include, but are not limited to, the right to navigate, swim, hunt, fish and enjoy all recreational activities in the watercourses of the State and the right to freely use and enjoy the State's ocean and estuarine beaches and public access to the beaches.' " *Friends of Hatteras Island Nat'l Historic Maritime Forest Land Trust for Pres., Inc. v. Coastal Res. Comm'n,* 117 N.C. App. 556, 574, 452 S.E.2d 337, 348 (1995) (emphasis omitted) (quoting N.C. Gen. Stat. § 1-45.1 (1994)).

As such, the public trust doctrine cannot give rise to an assertion of ownership that would be available to any "private litigants in like

circumstances." *Williams*, 266 N.C. at 765, 147 S.E.2d at 383. Any party, public or private, can assert title to land on the strength of a deed, but only the State, acting in its sovereign capacity, may assert rights in land by means of the public trust doctrine. *See Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 118, 574 S.E.2d 48, 54 (2002) (noting that "[t]he state is the sole party able to seek non-individualized, or public, remedies for alleged harm to" property covered by the public trust doctrine), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628 (2003). Indeed, as the United States Supreme Court has stated, the public trust doctrine "uniquely implicate[s] [a state's] sovereign interests." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 284, 138 L. Ed. 2d 438, 457, 117 S. Ct. 2028, 2041 (1997). Since any reliance by the State upon the public trust doctrine would constitute an interest in the property based on an "attribute of sovereignty" and not based "solely on rights and defenses available to private litigants in like circumstances," it cannot, under *Williams*, constitute a "claim of title in land" within the meaning of N.C. Gen. Stat. § 44-10.1.

Moreover, plaintiffs cite no authority to suggest that an informal assertion of an interest in property falls within N.C. Gen. Stat. § 44-10.1. While plaintiffs cite numerous cases construing the quiet title statute, N.C. Gen. Stat. § 41-10, it is § 44-10.1 that constitutes the waiver of sovereign immunity and not § 44-10. The question is not whether plaintiffs have asserted a claim under § 44-10, but rather whether their allegations are sufficient to establish a waiver of sovereign immunity under § 44-10.1.

A comparison of the two statutes, however, supports the State defendants' contention that plaintiffs' allegations do not set out a claim by the State of title to plaintiffs' land. N.C. Gen. Stat. § 41-10 provides: "An action may be brought by any person against another who claims *an estate or interest in real property* adverse to him for the purpose of determining such adverse claims . . . ." (Emphasis added.) The italicized language stands in contrast to the corresponding language in § 41-10.1: "Whenever the State of North Carolina or any agency or department thereof asserts *a claim of title to land*, . . . [an action may be brought] against the State . . . ." (Emphasis added.) Had the General Assembly intended in § 41-10.1 to waive the State's sovereign immunity whenever the State asserted simply an "interest in real property," it knew how to say so. *N.C. Baptist Hosps., Inc. v. Mitchell*, 323 N.C. 528, 538, 374 S.E.2d 844, 849 (1988) (in construing statute, noting "[t]here is no doubt that the leg-

islature knows how to draft such language when it chooses to do so"). Since the General Assembly chose to limit the waiver to an assertion of a "claim of title to land," rather than use the broader "interest in real property," we must construe that language strictly and hold that a "claim of title to land" requires more than just an interest in real property. *See Russello v. United States,* 464 U.S. 16, 23, 78 L. Ed. 2d 17, 24, 104 S. Ct. 296, 300 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.").

Thus, as to plaintiffs' contention that something less than a claim of title is sufficient to trigger the operation of the sovereign immunity waiver, " '[t]he short answer is that [the legislature] did not write the statute that way.' " *Id.* (quoting *United States v. Naftalin,* 441 U.S. 768, 773, 60 L. Ed. 2d 624, 630, 99 S. Ct. 2077, 2082 (1979)). Since plaintiffs' complaint does not include allegations sufficient to establish that the State has asserted a claim of title to property owned by plaintiffs within the meaning of N.C. Gen. Stat. § 41-10.1, plaintiffs have failed to allege facts sufficient to constitute a waiver of the State's sovereign immunity. The trial court, therefore, properly dismissed plaintiffs' quiet title claim.

### Declaratory Judgment

[5] Plaintiffs have also sought a declaratory judgment, alleging:

181. By reason of the foregoing, and specifically the State Defendants' interpretation of the public trust doctrine and the alleged rights of the general public over the private property belonging to the Plaintiffs owning beachfront lots, and specifically the Dry Sand Areas, there exists a justiciable controversy between [plaintiffs] and the State Defendants as to whether the public trust doctrine in the State of North Carolina extends to the Dry Sand Areas, and whether the public has an implied easement over the Dry Sand Areas of these Plaintiffs' property by virtue of the public trust doctrine, and, accordingly, pursuant to the provisions of N.C.G.S. 1-253, *et seq.,* the Plaintiffs owning beachfront property are entitled to have this Court issue its Declaratory Judgment on these issues, as set forth above, and any other issues that might arise from these proceedings.

We hold that the trial court properly dismissed this claim because plaintiffs have failed to set forth a justiciable controversy in their complaint.

As this Court has recently recognized in a declaratory judgment action against the State, "N.C. Gen. Stat. § 1-253 provides that our courts 'shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed.' " *Nat'l Travel Servs., Inc. v. State*, 153 N.C. App. 289, 291, 569 S.E.2d 667, 668 (2002) (quoting N.C. Gen. Stat. § 1-253 (2001)). This power is not unlimited: "In actions involving a request for a declaratory judgment, our Supreme Court 'has required that an actual controversy exist both at the time of the filing of the pleading and at the time of hearing.' " *Id.*, 569 S.E.2d at 668-69 (quoting *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585, 347 S.E.2d 25, 30 (1986)). The requirement of an actual controversy between the parties "is a jurisdictional prerequisite for a proceeding under the Declaratory Judgment Act." *Adams v. N.C. Dep't of Natural & Econ. Res.*, 295 N.C. 683, 703, 249 S.E.2d 402, 414 (1978).

Although our appellate courts have not specifically defined an "actual controversy," it is well established that "[a] mere difference of opinion between the parties" is not sufficient for purposes of the Declaratory Judgment Act. *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 205, 22 S.E.2d 450, 453 (1942). This Court does not have authority "to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." *Id.* at 204, 22 S.E.2d at 453. *See also Lide v. Mears*, 231 N.C. 111, 117, 56 S.E.2d 404, 409 (1949) (observing that "[t]he Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice"). An actual right of action is not necessary to establish an actual controversy, but "it is necessary that litigation appear unavoidable. Mere apprehension or the mere threat of an action or a suit is not enough." *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 62 (1984) (internal citations omitted).

In this case, plaintiffs' complaint contends that an actual controversy exists because of "the State defendants' interpretation of the public trust doctrine and the alleged rights of the general public" with respect to the dry sand beach, as set forth in the Schechter affidavit attached to the complaint. In that affidavit, Mr. Schecter, who was at that time Director of the Division of Coastal Management, stated that one of the duties of his office is the "implementation of the beach access policies of the [Coastal Resources Commission] and the Secretary of DENR, including application of the public trust doctrine to ocean beaches . . . ." Schechter explained that "[i]n the implementation of those policies," he "appl[ies] the following standards." He

FABRIKANT v. CURRITUCK CTY.

[174 N.C. App. 30 (2005)]

then described three zones of the beach and stated that "[t]he dry sand beach zone . . . can be privately owned, but is subject to public rights in the nature of an easement in favor of the general public for the use of the ocean beach."

Plaintiffs also urge us to look at the State defendants' answer to their complaint and the course of the litigation. This Court has previously held, however, that "our courts have jurisdiction to render declaratory judgments only when the complaint demonstrates the existence of an actual controversy. To satisfy the jurisdictional requirement of an actual controversy, it must be shown in the complaint that litigation appears unavoidable." *State ex rel. Utils. Comm'n v. Carolina Water Serv., Inc.*, 149 N.C. App. 656, 658, 562 S.E.2d 60, 62 (2002) (internal quotation marks and citations omitted). Our review is, therefore, limited to determining whether the complaint established an actual controversy.

**[6]** The question then becomes whether the Schechter affidavit attached to the complaint is sufficient to meet that requirement. That affidavit sets forth only the standards Mr. Schechter personally applied. Neither it nor the complaint sets forth any rule or regulation adopted by the State defendants. Likewise, nothing in plaintiffs' complaint refers to any rule or regulation concerning the public's use of the dry sand beaches. Moreover, neither the affidavit nor the complaint indicate that Mr. Schechter or anyone else employed by the State has either (1) applied Mr. Schechter's standards to any of the plaintiffs' property or (2) taken any other concrete action asserting rights in the dry sand beach.

In cases involving comparable allegations, our courts have consistently concluded that no justiciable controversy existed. For example, in *Barbour v. Little*, 37 N.C. App. 686, 247 S.E.2d 252, *disc. review denied*, 295 N.C. 733, 248 S.E.2d 862 (1978), the plaintiffs owned property along the Eno River in Orange County. In support of their request for a declaratory judgment that statutes providing for acquisition of land for state parks were unconstitutional, the plaintiffs alleged that (1) the defendants had announced their intention to adopt a master plan for a proposed Eno River State Park, (2) the defendants had prepared several different plans for the park, each of which encompassed property owned by the plaintiffs, and (3) the defendants had stated that the park would be established pursuant to one of the already proposed plans. The Court pointed out that "[n]one of the plaintiffs in the present action has as yet been directly and adversely affected by any statute which they seek to challenge in the

present action . . . ." *Id.* at 690-91, 247 S.E.2d at 255 (internal quotation marks omitted). According to the Court, "[a]ll that has occurred is that employees of the Division of Parks and Recreation in the North Carolina Department of Natural and Economic Resources have made initial alternative planning proposals for a State park which contemplate ultimate acquisition of certain lands of the plaintiffs for park purposes." *Id.* at 691, 247 S.E.2d at 255. The Court concluded that there was "[a] mere difference of opinion between the parties" that did not demonstrate the existence of a genuine controversy cognizable under the Declaratory Judgment Act. *Id. See also Town of Tryon,* 222 N.C. at 205, 22 S.E.2d at 453 ("A mere difference of opinion between the parties as to whether plaintiff has the right to purchase or condemn, or otherwise acquire the utilities of the defendant— without any practical bearing on any contemplated action—does not constitute a controversy within the meaning of the cited cases.").

Similarly, in *Nichols v. Lake Toxaway Co.,* 98 N.C. App. 313, 390 S.E.2d 770, *disc. review denied,* 327 N.C. 141, 394 S.E.2d 178 (1990), the plaintiffs contended that a justiciable controversy existed as to the existence of a right of first refusal as to the plaintiffs' property when the defendant company mailed a letter to all property owners in a development stating that the defendant had a right of first refusal on all property within the development. This Court held, however: "This general letter, targeted at no one in particular and not alluding to any legal recourse that would be taken if the residents did not comply with the terms of their deeds, is not the makings of an 'actual controversy' ripe for declaratory judgment." *Id.* at 316, 390 S.E.2d at 772.

In *Adams,* the plaintiffs based their claim of an actual controversy on the fact that the Coastal Resource Commission had designated their land as an "interim" area of environmental concern and as a "conservation area." 295 N.C. at 703, 249 S.E.2d at 414. According to the plaintiffs, these designations meant that applications for development permits would likely be denied in the future, thereby impairing the usefulness and value of their property. After noting that the Commission would have to engage in various further administrative proceedings before any permits could be denied and that plaintiffs had not yet, in any event, had occasion to seek development permits, variances, or exemptions, the Court held: "[T]here is no justiciable controversy . . . entitling plaintiffs to relief under the Declaratory Judgment Act." *Id.* at 705, 249 S.E.2d at 415.

We find plaintiffs' allegations immaterially different from those deemed insufficient in *Barbour, Nichols,* and *Adams.* Here, at most,

plaintiffs have alleged a statement by a single State official asserting a standard that he himself applies generally, which has not, through any specific action, been applied to plaintiffs' particular property. *Compare, e.g., Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm'n*, 336 N.C. 200, 213, 443 S.E.2d 716, 724 (1994) ("We do not require that the challenged regulation have taken effect, only that it have been enacted or adopted by the administrative agency. . . . Further, we require that plaintiffs be directly and adversely affected by the regulation."). In contrast to the above cases, the Schechter affidavit does not even threaten to take any action with respect to any specific parcel of land that plaintiffs own. Nor does it threaten any action should plaintiffs attempt to limit public access to the dry sand beach.

In short, at best, plaintiffs have asserted a difference of opinion between them and Mr. Schechter regarding the application of the public trust doctrine to the dry sand beach. Plaintiffs are asking us to render an opinion resolving the abstract issue whether the public trust doctrine gives rise to a public easement over the dry sand beaches of our State. In the absence of allegations in the complaint demonstrating an attempt by the State to enforce, with respect to plaintiffs, its alleged opinion regarding the dry sand beach, we do not have jurisdiction to do so. Neither did the superior court. The trial court, therefore, properly dismissed plaintiffs' request for a declaratory judgment.

## Plaintiffs' Constitutional Claims

[7] Plaintiffs next argue that "[f]or any court of this State to declare that the general public [has] an implied easement for which the Property Owners need not be compensated would be an unconstitutional taking or deprivation of property without due process." Plaintiffs' eighth claim for relief, addressing this theory, states, in pertinent part:

> In the event this Court declares that the State, and therefore the general public, have an implied easement over the Dry Sand Areas of the real property belonging to the Plaintiffs owning beachfront lots, the establishment of such an easement for a public purpose constitutes a taking of these Plaintiffs' real property without compensation . . . .

The parties have identified this as a "judicial takings" claim.

Because of our disposition of plaintiffs' quiet title and declaratory judgment claims based on sovereign immunity and the lack of a justi-

ciable controversy, we need not address the merits of this claim for relief. Dismissal of a claim is proper when the claim is conditioned on the finding of liability under another separate claim, and no such underlying liability was found. *See Huyck Corp. v. C.C. Mangum, Inc.*, 309 N.C. 788, 793-94, 309 S.E.2d 183, 187 (1983). Accordingly, the trial court properly dismissed plaintiffs' judicial taking claim.

[8] Plaintiffs amended their complaint to add an additional constitutional claim: that N.C. Gen. Stat. §§ 77-20(d) & (e) constitute an unconstitutional taking of property to the extent the subsections may be construed to grant the public an easement over the dry sand beach. In the proceedings below, the State represented that it was not contending that the statutory subsections created rights in the public to the dry sand beach. Plaintiffs orally responded:

> In view of the State's position today that that is not their interpretation of [N.C. Gen. Stat. §§ 77-20 (d) & (e)], if they're making that representation to the Court and therefore, disclaiming any reliance on 77-20 for the purpose of creating a public recreational easement, we can usually consent to dismissal of the 23rd Claim for Relief. . . . *And we can again at the Court's wish, we can either enter into a stipulation to the effect of dismissing the 23rd Claim for Relief or have the Court dismiss it based on the representations made by the State today.*

(Emphasis added.)

On appeal, plaintiffs do not argue the merits of this claim for relief. Rather, they contend that the trial court erred in dismissing that claim when "[t]he proper disposition was to have a stipulated dismissal in which the State's undertaking not to rely upon section 77-20(d) & (e) was recorded, or at a minimum, that the State's stipulation be noted on the face of the court's Order." Plaintiffs, however, gave the trial court the option to dismiss the claim outright rather than enter a stipulated dismissal. "A party may not complain of action which he induced." *Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994).

Further, plaintiffs cite no authority in support of their argument that they are entitled to a "stipulated dismissal" in lieu of the order dismissing their claim on the merits. "Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6). We, therefore, overrule this assignment of error.

SUNBELT RENTALS, INC. v. HEAD & ENGQUIST EQUIP., L.L.C.

[174 N.C. App. 49 (2005)]

Affirmed.

Judges CALABRIA and STEELMAN concur.