NO. COA13-1240

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

CAN AM SOUTH, LLC,
    Plaintiff,

    v.                                    Wake County
                                          No. 12 CVS 14873
THE STATE OF NORTH CAROLINA, THE
NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, and THE
NORTH CAROLINA DEPARTMENT OF
ADMINISTRATION,
    Defendants.


Appeal by defendants from order entered 8 May 2013 by Senior Resident Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 5 March 2014.


*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Walter L. Tippett, Jr. and S. Wilson Quick, for plaintiff-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Donald R. Teeter, Sr. and Assistant Attorney General G. Mark Teague, for defendants-appellants.*


HUNTER, Robert C., Judge.


The State of North Carolina ("the State"), the North Carolina Department of Health and Human Services ("DHHS"), and the North Carolina Department of Administration (collectively "defendants") appeal from an order denying their motion to

dismiss. Can Am South, LLC ("plaintiff") filed suit against defendants for breach of contract and declaratory judgment. Defendants argue that the trial court erred by: (1) denying defendants' motion to dismiss plaintiff's claim for a declaratory judgment because defendants did not waive sovereign immunity, or in the alternative, the complaint fails to allege the existence of an actual controversy; and (2) denying defendants' motion to dismiss because defendants did not breach any contract with plaintiff, thus foreclosing waiver of sovereign immunity. Defendants also argue that the availability of funds clause in the lease agreements is enforceable and its enforcement does not constitute a breach of contract.

After careful review, we dismiss the appeal in part and affirm the trial court's order denying defendants' Rule 12(b)(2) motion to dismiss on the ground of sovereign immunity.

**Background**

The facts of this case are undisputed. Plaintiff is a limited liability company existing under the laws of North Carolina but operating its principal place of business in New York. Plaintiff owns a converted commercial office and storage facility in Raleigh, N.C., which it leased at varying times and capacities to defendants.

Plaintiff entered into the first lease ("the DDS lease") with the State on 20 May 1999 for use by the Department of Health and Human Services, Disability Determination Services ("DDS"). Plaintiff and the State entered into a renewal agreement, the effect of which was to extend the DDS lease through 31 July 2019 and to include the so-called "availability of funds clause." The availability of funds clause states:

> 15. The parties to this lease agree and understand that the continuation of this Lease Agreement for the term period set forth herein, or any extension or renewal thereof, is dependent upon and subject to the appropriation, allocation or availability of funds for this purpose to the agency of the Lessee responsible for payment of said rental. The parties to this lease also agree that in the event the agency of the Lessee or that body responsible for the appropriation of said funds, in its sole discretion, determines in view of its total local office operations that available funding for the payment of rents is insufficient to continue the operation of its local office on the premise leased herein, it may choose to terminate the lease agreement set forth herein by giving Lessor written notice of said termination, and the lease agreement shall terminate immediately without any further liability to Lessee.

Defendants have not attempted to exercise their right to terminate the DDS lease pursuant to the availability of funds clause.

On 6 November 2000, plaintiff and the State entered into the second lease ("the ACTS lease") for use by an administrative unit of DHHS known as Automation Collections and Tracking System(s) ("ACTS"). The availability of funds clause was included in the ACTS lease, and after renewal, the lease was set to run through 28 February 2014. However, DHHS notified plaintiff on 12 May 2011 that the State was exercising its right to terminate the ACTS lease pursuant to the availability of funds clause, effective 30 June 2011. The State thus terminated the ACTS lease on 30 June 2011, removed ACTS from the premises, and stopped paying rent on the lease.

On 2 April 2001, plaintiff and the State entered into the third lease ("the CSE lease") for use by the Child Support Enforcement ("CSE") division of DHHS. The CSE lease also contained the availability of funds clause, and after renewal, the lease was set to run through 31 August 2014. However, the Department of Administration notified plaintiff on 15 August 2011 that the State was exercising its right to terminate the CSE lease pursuant to the availability of funds clause, effective 31 October 2011. A second termination letter was sent 26 September 2011 notifying plaintiff that the termination date was revised to 30 September 2011. The State terminated the CSE

lease on 30 September 2011, removed CSE from the premises, and stopped paying rent on the lease.

Plaintiff filed suit against defendants on 23 October 2012 claiming breach of both the ACTS and CSE leases and seeking declaratory judgment prohibiting the State from terminating the DDS lease under the availability of funds clause. Defendants entered a motion to dismiss plaintiff's complaint pursuant to Rules 12(b)(1), (2), and (6), claiming specifically that defendants' sovereign immunity had not been waived in any way. By order entered 8 May 2013, the trial court denied defendants' motion to dismiss in its entirety. Defendants filed timely notice of appeal.

**Motion to Dismiss**

Plaintiff filed a motion to dismiss this appeal on 7 January 2014. We must first determine what portion of defendants' appeal, if any, is properly before us. After careful review, we allow in part and deny in part plaintiff's motion to dismiss.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an

action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). "Typically, the denial of a motion to dismiss is not immediately appealable to this Court because it is interlocutory in nature." *Reid v. Cole*, 187 N.C. App. 261, 263, 652 S.E.2d 718, 719 (2007). However, N.C. Gen. Stat. § 1-277 (2013) allows a party to immediately appeal an order that either (1) affects a substantial right or (2) constitutes an adverse ruling as to personal jurisdiction.

Here, defendants moved to dismiss plaintiff's cause of action pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (2013) (lack of subject matter jurisdiction); N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) (2013) (lack of personal jurisdiction); N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2013) (failure to state a claim upon which relief can be granted). Specifically, defendants moved to dismiss both of plaintiff's claims under Rules 12(b)(1) and (2), but notably not Rule 12(b)(6), based on the defense of sovereign immunity. Defendants moved to dismiss the claim for a declaratory judgment

under Rule 12(b)(6) for failure of the complaint to adequately plead an actual controversy.

Had defendants moved to dismiss based on the defense of sovereign immunity pursuant to Rule 12(b)(6), we would be bound by the longstanding rule that the denial of such a motion affects a substantial right and is immediately appealable under section 1-277(a). *See Green v. Kearney*, 203 N.C. App. 260, 266, 690 S.E.2d 755, 761 (2010). However, defendants' sovereign immunity defense is premised on a lack of either subject matter jurisdiction under Rule 12(b)(1) or personal jurisdiction under Rule 12(b)(2). A denial of a Rule 12(b)(1) motion based on sovereign immunity does not affect a substantial right is therefore not immediately appealable under section 1-277(a). *See Meherrin Indian Tribe v. Lewis*, 197 N.C. App. 380, 385, 677 S.E.2d 203, 207 (2009); *Horne v. Town of Blowing Rock*, __ N.C. App. __, __, 732 S.E.2d 614, 616 (2012). Thus, discussion as to whether sovereign immunity raises the question of subject matter or personal jurisdiction under Rules 12(b)(1) and 12(b)(2) is necessary to analyze whether defendants may immediately appeal pursuant to section 1-277(b).

Initially, our Supreme Court held in *Love v. Moore*, 305 N.C. 575, 581, 291 S.E.2d 141, 146 (1982), that immediate appeal

under section 1-277(b) is limited to adverse rulings on "minimum contacts" questions, not issues of personal jurisdiction generally. However, shortly over two months after the *Love* decision was entered, the Supreme Court in *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327-28, 293 S.E.2d 182, 184 (1982), hinted at the possibility of sovereign immunity defenses triggering immediate appeal under section 1-277(b). The Court noted that:

> A viable argument may be propounded that the State, as a party, is claiming by the doctrine of sovereign immunity that the particular forum of the State courts has no jurisdiction over the State's person. On the other hand, the doctrine may be characterized as an objection that the State courts have no jurisdiction to hear the particular subject matter of [the] claims against the State. Although the federal courts have tended to minimize the importance of the designation of a sovereign immunity defense as either a Rule 12(b)(1) motion regarding subject matter jurisdiction or a Rule 12(b)(2) motion regarding jurisdiction over the person, the distinction becomes crucial in North Carolina because G.S. 1-277(b) allows the immediate appeal of a denial of a Rule 12(b)(2) motion but not the immediate appeal of a denial of a Rule 12(b)(1) motion. The determination of this issue is not essential to this Court's authority to decide the instant case, however, because the case is before us on discretionary review under G.S. 7A-31, and we elect to exercise our supervisory authority to determine the underlying issues. . . . Therefore, we do

> not determine whether sovereign immunity is a question of subject matter jurisdiction or whether the denial of a motion to dismiss on grounds of sovereign immunity is immediately appealable.

The Supreme Court has yet to offer further guidance on this distinction.

However, apparently beginning with *Sides v. Hospital*, 22 N.C. App. 117, 205 S.E.2d 784 (1974), *mod. on other grounds*, 287 N.C. 14, 213 S.E.2d 297 (1975), this Court has consistently held that: (1) the defense of sovereign immunity presents a question of personal, not subject matter, jurisdiction, and (2) denial of Rule 12(b)(2) motions premised on sovereign immunity are sufficient to trigger immediate appeal under section 1-277(b). *See Stahl-Rider, Inc. v. State*, 48 N.C. App. 380, 383, 269 S.E.2d 217, 219 (1980) (citing *Sides* for the proposition that "an immediate appeal lies under G.S. 1-277(b) from the trial court's refusal to dismiss a suit against the State on grounds of governmental immunity"); *Zimmer v. N.C. Dep't of Transp.*, 87 N.C. App. 132, 133–34, 360 S.E.2d 115, 116-17 (1987) (noting that the *Teachy* Court cited *Sides* and *Stahl-Rider, Inc.*, but did not expressly overturn them, and holding that the trial court's denial of a Rule 12(b)(2) motion premised on sovereign immunity was immediately appealable under section 1-277(b) pursuant to

those rulings); *Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 99–100, 545 S.E.2d 243, 245–46 (2001) (relying on *Zimmer* for the same proposition); *Meherrin Indian Tribe*, 197 N.C. App. at 385, 677 S.E.2d at 207 (relying on *Data Gen. Corp.* for the same proposition).

Pursuant to this line of precedent, we enter the following disposition as to plaintiff's motion to dismiss. First, we dismiss defendants' appeal from the trial court's order denying their Rule 12(b)(6) motion to dismiss based on the argument that plaintiff failed to adequately plead an actual controversy in the declaratory judgment claim; denial of this motion involves neither a substantial right under section 1-277(a) nor an adverse ruling as to personal jurisdiction under section 1-277(b), and thus is not immediately appealable. *See* N.C. Gen. Stat. § 1-277. Second, we dismiss defendants' appeal from the trial court's order denying their Rule 12(b)(1) motion based on the defense of sovereign immunity. As the *Meherrin Indian Tribe* Court held, orders denying Rule 12(b)(1) motions to dismiss based on sovereign immunity are not immediately appealable because they neither affect a substantial right nor constitute an adverse ruling as to personal jurisdiction. *Meherrin Indian Tribe*, 197 N.C. App. at 384, 677 S.E.2d at 207. However, we

allow defendants' appeal from the trial court's order denying their Rule 12(b)(2) motion to dismiss based on sovereign immunity. As has been held consistently by this Court, denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable under section 1-277(b). *See id.*; *Data Gen. Corp.*, 143 N.C. App. at 99–100, 545 S.E.2d at 245–46; *Zimmer*, 87 N.C. App. at 133–34, 360 S.E.2d at, 116; *Stahl-Rider, Inc.*, 48 N.C. App. at 383, 269 S.E.2d at 219.

In sum, we will consider only one issue on appeal: whether the trial court properly denied defendants' Rule 12(b)(2) motion to dismiss on the ground of sovereign immunity.

## Discussion

### I. Sovereign Immunity

Defendants argue that they did not expressly or impliedly waive their sovereign immunity and the trial court therefore erred by denying their motion to dismiss both the breach of contract claim and the claim for declaratory relief. We disagree.

The doctrine of sovereign immunity is well-settled in North Carolina:

> It is an established principle of jurisprudence, resting on grounds of sound

> public policy, that a state may not be sued in its own courts or elsewhere unless it has consented by statute to be sued or has otherwise waived its immunity from suit. By application of this principle, a subordinate division of the state or an agency exercising statutory governmental functions may be sued only when and as authorized by statute.

*Welch Contracting, Inc. v. N.C. Dep't of Transp.*, 175 N.C. App. 45, 51, 622 S.E.2d 691, 695 (2005) (citations omitted). Sovereign immunity is not merely a defense to a cause of action; it is a bar to actions that requires a plaintiff to establish a waiver of immunity. *Arrington v. Martinez*, 215 N.C. 252, 263, 716 S.E.2d 410, 417 (2011). Thus, the trial court must determine "whether the complaint specifically alleges a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action." *Sanders v. State Pers. Comm'n*, 183 N.C. App. 15, 19, 644 S.E.2d 10, 13 (2007) (internal quotation marks omitted). However, "[p]recise language alleging that the State has waived the defense of sovereign immunity is not necessary, but, rather, the complaint need only contain sufficient allegations to provide a reasonable forecast of waiver." *Richmond Cnty. Bd. of Educ. v. Cowell*, __ N.C. App. __, __, 739 S.E.2d 566, 569 (2013) (citations and internal quotation marks omitted).

The seminal case on waiver of sovereign immunity in the context of contractual disputes is *Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976). In *Smith*, the North Carolina Supreme Court articulated five considerations which moved the Court to recognize an implied waiver of sovereign immunity where the State enters into a valid contract with a private party:

> (1) To deny the party who has performed his obligation under a contract the right to sue the state when it defaults is to take his property without compensation and thus to deny him due process; (2) To hold that the state may arbitrarily avoid its obligation under a contract after having induced the other party to change his position or to expend time and money in the performance of his obligations, or in preparing to perform them, would be judicial sanction of the highest type of governmental tyranny; (3) To attribute to the General Assembly the intent to retain to the state the right, should expedience seem to make it desirable, to breach its obligation at the expense of its citizens imputes to that body "bad faith and shoddiness" foreign to a democratic government; (4) A citizen's petition to the legislature for relief from the state's breach of contract is an unsatisfactory and frequently a totally inadequate remedy for an injured party; and (5) The courts are a proper forum in which claims against the state may be presented and decided upon known principles.

*Id.* at 320, 222 S.E.2d at 423. Based on these considerations, the *Smith* Court held that "whenever the State of North Carolina, through its authorized officers and agencies, enters into a

valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Id.* at 320, 222 S.E.2d at 423-24. "Thus, . . . in causes of action on contract . . . the doctrine of sovereign immunity will not be a defense to the State." *Id.* at 320, 222 S.E.2d at 424.

In order to analyze the trial court's order denying defendants' Rule 12(b)(2) motion to dismiss based on sovereign immunity here, we must consider: (1) whether plaintiff sufficiently pleaded that defendants waived their sovereign immunity; and (2) whether defendants expressly or impliedly waived sovereign immunity.

First, we hold that plaintiff sufficiently pleaded waiver of defendants' sovereign immunity. The requirement that a plaintiff specifically allege waiver of governmental immunity "does not . . . mandate that a complaint use any particular language." *Fabrikant v. Currituck Cnty.*, 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005). Rather, "consistent with the concept of notice pleading, a complaint need only allege facts that, if taken as true, are sufficient to establish a waiver by the State of sovereign immunity." *Id.* Here, plaintiff specifically pleaded in its complaint that "[t]he defense of sovereign immunity is not applicable to any claims alleged herein."

Furthermore, plaintiffs pleaded with particularity the circumstances surrounding their entry into three facially valid contracts with defendants, which, as will be discussed below, amount to "facts, if taken as true, [that] are sufficient to establish a waiver by the State of sovereign immunity." *Id.* at 38, 621 S.E.2d at 25.

Next, we conclude that defendants impliedly waived their sovereign immunity by entering into the lease agreements with plaintiff. Defendants argue that because they did not breach either the ACTS or the CSE lease agreements, and because there is no proof that they will breach the DDS lease, plaintiff cannot establish waiver of sovereign immunity.[1] However, defendants cite to no authority, and we find none, for the proposition that waiver of sovereign immunity is contingent on breach of contract. This Court has consistently held that we are not to consider the merits of a claim when addressing the

---

[1] For example, defendants assert that: "In order to overcome the bar of sovereign immunity and establish an implied waiver of Defendants' immunity to suit, the Plaintiff is required to plead with sufficient certitude that Defendants did indeed breach the lease contracts." Regarding the DDS lease, defendants contend: "Plaintiff has not alleged that the State has breached the DDS lease in any manner and also has not alleged a sufficient factual basis to find that there is a likelihood the State will breach the DDS lease. Therefore, sovereign immunity bars Plaintiff's claim for declaratory relief and the trial court erred in denying Defendants' motion to dismiss."

applicability of sovereign immunity as a potential defense to liability. *See Archer v. Rockingham Cnty.*, 144 N.C. App. 550, 558 548 S.E.2d 788, 793 (2001) (noting that, when considering the applicability of sovereign immunity as a defense to breach of a governmental employment contract, "[this Court is] not now concerned with the merits of plaintiff's contract action. . . . whether plaintiffs are ultimately entitled to relief [is a] question[] not properly before us"); *see also Smith*, 289 N.C. at 322, 222 S.E.2d at 424 ("We are not now concerned with the merits of the controversy. . . . We have no knowledge, opinion, or notion as to what the true facts are.  These must be established at the trial.  Today we decide only that plaintiff is not to be denied his day in court because his contract was with the State.").

Furthermore, all applicable caselaw leads us to conclude that the State waives its sovereign immunity when it *enters* into a contract with a private party, not when it engages in conduct that may or may not constitute a breach. *See Smith*, 289 N.C. at 320, 222 S.E.2d at 423-24 ("[W]henever the State of North Carolina, through its authorized officers and agencies, *enters into a valid contract*, the State implicitly consents to be sued for damages on the contract in the event it breaches the

contract.") (emphasis added); *Ferrell v. Dep't of Transp.*, 334 N.C. 650, 654, 435 S.E.2d 309, 312 (1993) ("[V]arious policy considerations compel the conclusion that when the State *enters into a contract through its authorized officers and agencies*, it implicitly consents to suit for damages if it breaches that contract.") (emphasis added). It is plain to us that the phrases "in the event it breaches the contract" and "if it breaches that contract" in the cases above refer to the events that would typically trigger a suit against the State. They do not mean that the State only waives its sovereign immunity "in the event it breaches the contract" and "if it breaches that contract." To hold otherwise would require a plaintiff to definitively establish its entire cause of action against the State in its complaint without the opportunity to conduct discovery, a result that was clearly unintended by the *Smith* Court when it adopted the doctrine of implied waiver of sovereign immunity in this context. *See Smith*, 289 N.C. at 320, 222 S.E.2d at 423 (noting that the same policy considerations it identified as the basis for its holding are used in other states to hold that "a state implicitly consents to be sued upon any valid contract *into which it enters*") (emphasis added).

Defendants also cite *Petroleum Traders Corp. v. State*, 190 N.C. App. 542, 546-47, 660 S.E.2d 662, 664 (2008) for the proposition that they did not waive sovereign immunity as a defense to plaintiff's claim for a declaratory judgment. We disagree. This argument was previously addressed in *ACC v. University of Maryland*, __ N.C. App. __, __, 751 S.E.2d 612, 621 (2013), where this Court held that *Smith's* recognition of waiver in "causes of action on contract" includes actions for declaratory relief seeking to ascertain the rights and obligations owed under a contract with the State. The *ACC* Court distinguished *Petroleum Traders Corp.* on the ground that the plaintiff in that case sought "a declaration that a statutorily authorized bidding fee . . . violated the North Carolina Constitution," not a request to ascertain the rights and obligations owed by the parties to a contract. *Id.* at __, 751 S.E.2d at 620. Because plaintiff here is seeking to ascertain the rights and obligations of the parties to the DDS lease and is not asking for a declaration as to a potential constitutional breach, this case is more comparable to *ACC* than *Petroleum Traders Corp.* Therefore the holding in *ACC* that "declaratory relief actions are a 'cause of action on contract' sufficient to

waive the State's sovereign immunity" is binding and applicable here.

Because it is undisputed that plaintiff and defendants entered into three facially valid lease agreements, we hold that defendants impliedly waived their sovereign immunity from suit as to those contracts. We further conclude that it is inappropriate to consider the merits of plaintiff's claims at this time, because such arguments are unnecessary to determine the dispositive issues on appeal, namely, whether defendants waived sovereign immunity.

**Conclusion**

For the foregoing reasons, we allow plaintiff's motion to dismiss the appeal as to defendants' Rule 12(b)(1) and (6) motions, but allow immediate appeal from the order denying defendants' Rule 12(b)(2) motion to dismiss on the ground of sovereign immunity. Because plaintiff sufficiently alleged waiver of sovereign immunity in its complaint and defendants impliedly waived sovereign immunity by entering into the lease agreements with plaintiff, we affirm the trial court's order denying defendants' motion.

AFFIRMED IN PART; DISMISSED IN PART.

Judges GEER and McCULLOUGH concur.