TOWN OF NAGS HEAD, Plaintiff v. CHERRY, INC., Defendant

No. COA11-931

(Filed 21 February 2012)

## 1. State—public trust rights—standing

The trial court erred by denying defendant's motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1). Regardless of plaintiff's attempt to argue that nuisance is the basis of its claims, the potential destruction of defendant's dwelling based upon the claim that it was located within a public trust area was actually an attempt to enforce the State's public trust rights. Only the State acting through the Attorney General has standing to bring an action to enforce the State's public trust rights in accord with N.C.G.S. § 113-131.

## 2. Nuisance—unrepaired dwelling—town ordinance

The trial court did not err by granting partial summary judgment in favor of plaintiff based upon Town Ordinance § 16-31(6)(b). Defendant would have promptly performed the necessary repairs to its dwelling if plaintiff had not refused to issue the required permits. The case was remanded for further proceedings on the issue of whether the dwelling was a nuisance under the town ordinance, and if so, to determine appropriate relief.

**TOWN OF NAGS HEAD v. CHERRY, INC.**

[219 N.C. App. 66 (2012)]

Appeal by defendant from orders entered on or about 24 January 2011 by Judge Quentin T. Sumner in Superior Court, Dare County. Heard in the Court of Appeals 12 January 2012.

*Hornthal, Riley, Ellis & Maland, L.L.P., by Benjamin M. Gallop and John D. Leidy, for plaintiff-appellee.*

*Vandeventer Black LLP, by Norman W. Shearin and Wyatt M. Booth, for defendant-appellant.*

STROUD, Judge.

Defendant appeals trial court orders denying its motions to dismiss and granting partial summary judgment in favor of plaintiff. For the following reasons, we reverse the trial court's order denying defendant's motion to dismiss pursuant to Rule of Civil Procedure 12(b)(1) and reverse the trial court's order granting partial summary judgment and remand for further proceedings.

## I. Background

On 19 April 2010, plaintiff filed a verified complaint alleging that defendant owned a "Dwelling" that "[s]ince at least October 6, 2008 . . . has been damaged to such an extent that the condition of the Dwelling was unsafe for human habitation causing the Dwelling to be condemned by the Town's building inspector[.]" Plaintiff further alleged:

The Town's Manager inspected the Dwelling . . . and determined at the time of his inspection:

a.    That the Dwelling was in a deteriorated and damaged condition;

b.     That the Dwelling was disconnected from utilities;

c.    That the Dwelling was disconnected from approved means of sewage disposal;

d.    That components of the Dwelling's on-site sewage disposal system were visibly damaged or missing;

e.    That the Dwelling was located in its entirety on the wet sand beach as evidenced by the high tide swash line and tidal pools located westward of the Dwelling;

f.    That the Dwelling restricted vehicle access along the public trust beach area;

g.    That the Dwelling restricted pedestrian access along the
      public trust beach area;

h.    That the Dwelling had incurred storm and/or erosion
      damage;

i.    That the Dwelling was located wholly or partially on land
      subject to the public trust and within the public trust
      beach area; and

j.    That there did not appear to be an opportunity for reloca-
      tion of the Dwelling on its lot in a manner complying with
      relevant federal, state and local laws and regulations.

Plaintiff further alleged that "[a]t all times subsequent to the Town
Manager's inspection, the condition of the Dwelling has remained the
same or has deteriorated due to weather, lack of use, lack of repair
and damage caused by erosion, coastal storms, hurricanes and tropi-
cal storms." The Town Manager "declared the Dwelling to be a public
nuisance . . . and provided Defendant eighteen (18) days to abate the
nuisance by demolishing and/or removing the Dwelling." Plaintiff
requested, *inter alia*,

> [a]n order of abatement . . . commanding Defendant[] to imme-
> diately, and at [its] sole expense, bring the Property in compli-
> ance with all applicable regulations and laws by demolishing,
> repairing or otherwise taking corrective action regarding the
> Dwelling . . . or commanding the Defendant[] to immediately
> allow the Town to enter upon the Property and take such
> action at the Defendants' sole expense.

On 7 July 2010, defendant filed a motion to dismiss pursuant to
Rules of Civil Procedure 12(b)(1) and (6), answered plaintiff's com-
plaint, and counterclaimed for inverse condemnation. On 26 July
2010, plaintiff filed motions to dismiss defendant's counterclaim. On
8 October 2010, defendant voluntarily dismissed its counterclaim.
On or about 15 October 2010, plaintiff filed a motion for summary
judgment. On 29 November 2010, plaintiff filed an amended/renewed
motion for summary judgment.

On 6 December 2010, the trial court heard defendant's motions to
dismiss and plaintiff's motions for summary judgment. Plaintiff pro-
vided two separate bases for declaring defendant's Dwelling a nui-
sance predicated upon Town of Nags Head Code of Ordinances

**TOWN OF NAGS HEAD v. CHERRY, INC.**

[219 N.C. App. 66 (2012)]

("Town Ordinance") § 16-31(6):[1] (1) "when there is a damaged structure or debris from [a] damage[d] structure where it can reasonably be determined that there is a likelihood of personal or property injury" and (2) "any structure regardless of the condition—it can be a brand new structure or any debris from a damaged structure which is located in whole or in part in a public trust area or on public land[.]" Town Ordinance § 16-31(6) provides in pertinent part,

> The existence of any of the following conditions associated with storm-damaged or erosion—amaged structures or their resultant debris shall constitute a public nuisance.
>
> . . . .
>
> b. Damaged structure or debris from damaged structures where it can reasonably be determined that there is a likelihood of personal or property injury;
>
> c. Any structure, regardless of condition, or any debris from damaged structure which is located in whole or in part in a public trust area or public land.

Town of Nags Head, N.C., Code § 16-31(6) (2007). Town Ordinance § 16-33 further provides that "[u]pon a determination that conditions constituting a public nuisance exist, the town manager . . . shall order the prompt abatement thereof . . . ." Town of Nags Head, N.C., Code § 16-33(a) (2007). "Abatement of a public nuisance shall consist of taking whatever appropriate steps are reasonably necessary to remove the condition or conditions which result in the declaration of a public nuisance." Town of Nag's Head, N.C., Code § 16-33(b) (2007).

On 24 January 2011, the trial court entered orders denying defendant's motions to dismiss and granting plaintiff's motion for partial summary judgment as to the claim of abatement. The trial court stated that "Plaintiff's claim for public nuisance and order of abatement is GRANTED" and ordered that defendant "at its sole expense, abate the public nuisance . . . by demolishing or removing the structure" and if defendant failed to take such action within 20 days "Plaintiff may enter upon the Property and abate the public nui-

---

1. Neither party contests the applicability of Town Ordinance 16-31(6) which addresses only "[s]torm or erosion damaged structures and resulting debris." Town of Nags Head, N.C., Code § 16-31(6) (2007).

**TOWN OF NAGS HEAD v. CHERRY, INC.**

[219 N.C. App. 66 (2012)]

sance[.]" Defendant appeals the orders denying its motions to dismiss and the order granting partial summary judgment.[2]

## II. Public Trust

**[1]** Defendant first contends that the trial court erred in denying its motion to dismiss pursuant to Rule 12(b)(1). As to the public trust doctrine, defendant contends that

> the public trust doctrine is a common law right in the public that is held by the State of North Carolina and is enforceable only by the State in its sovereign capacity. The Town has no authority under the common law or under N.C. Gen. Stat. § 77-20 to enforce the State's common law rights, and therefore lacks the requisite subject matter jurisdiction to bring any action predicated on enforcement of the public trust doctrine.

Although the trial court's order does not state the specific basis for its ruling, it would appear that it was most likely based upon town ordinance § 16-31(6)(c), since the trial court ordered demolition of the Dwelling. *See* Town of Nag's Head, N.C., Code § 16-31(6)(c). If the Dwelling was a nuisance because of its location in a public trust area, then the only way to abate the nuisance would be removal of the Dwelling, while conditions such as damage to the Dwelling could most likely be repaired. To the extent that plaintiff seeks removal of the Dwelling as a nuisance according to Town Ordinance § 16-31(6)(c), we must first consider plaintiff's standing to enforce the public trust rights of the State.

Plaintiff claims that it is not seeking to enforce the State's public trust rights, arguing that

> [t]he Town is not attempting to enforce the State's public trust rights with this action, but even if it were, it would have authority to do so as a governmental agency. The Defendant relies on *dicta* in multiple cases which seem to imply that the State of North Carolina must bring an action to enforce public

2. In its verified complaint, plaintiff also requested monetary relief due to civil penalties incurred by defendant in failing to abate the Dwelling; this request was not addressed in the trial court's order granting partial summary judgment in favor of plaintiff. However, as this is a final order as to the claim of abatement and the trial court certified its order pursuant to North Carolina Rule of Civil Procedure 54(b) as a final order, we will address defendant's appeal. *See Stinchcomb v. Presbyterian Med. Care*, ___ N.C. App. ___, ___, 710 S.E.2d 320, 323 ("[A]n interlocutory order may be immediately appealed (1) if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal pursuant to N.C. R. Civ. P. 54(b)[.]" (citation and quotation marks omitted)), *disc. review denied*, ___ N.C. ___, 717 S.E.2d 376 (2011).

trust rights via the Attorney General. No case in North Carolina has held such against an action brought by anything other than private individuals and entities. Even if determined not to be *dicta*, the Town acts as a governmental agency and exercises the police power of the State.

(Citations and quotation marks omitted.)

"The standard of review on a motion to dismiss under Rule 12(b)(1) is *de novo.*" *Fairfield Harbour v. Midsouth Golf, LLC,* ___ N.C. App. ___, ___, 715 S.E.2d 273, 280 (2011) (citation and quotation marks omitted).

This Court has previously described the public trust doctrine as applicable to land adjoining bodies of water:

> The public trust doctrine is a common law principle providing that certain land associated with bodies of water is held in trust by the State for the benefit of the public. As this Court has held, public trust rights are those rights held in trust by the State for the use and benefit of the people of the State in common. They include, but are not limited to, the right to navigate, swim, hunt, fish and enjoy all recreational activities in the watercourses of the State and the right to freely use and enjoy the State's ocean and estuarine beaches and public access to the beaches.

> As such, the public trust doctrine cannot give rise to an assertion of ownership that would be available to any private litigants in like circumstances. *Any party, public or private, can assert title to land on the strength of a deed, but only the State, acting in its sovereign capacity, may assert rights in land by means of the public trust doctrine.* Indeed, as the United States Supreme Court has stated, the public trust doctrine uniquely implicates a state's sovereign interests.

*Fabrikant v. Currituck Cty.,* 174 N.C. App. 30, 41-42, 621 S.E.2d 19, 27 (2005) (emphasis added) (citations, quotation marks, ellipses, and brackets omitted).

> *The state is the sole party able to seek non-individualized, or public, remedies for alleged harm to public waters.* Under the public trust doctrine,

> > the State holds title to the submerged lands under navigable waters, but it is a title of a different character than that which it holds in other lands. It is a title held in trust for the

TOWN OF NAGS HEAD v. CHERRY, INC.

[219 N.C. App. 66 (2012)]

people of the state so that they may navigate, fish, and carry on commerce in the waters involved.

*Only the state, through the Attorney General, is authorized to bring in a representative capacity for and on behalf of the using and consuming public of this State actions deemed to be advisable in the public interest.*

*Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 118-19, 574 S.E.2d 48, 54 (2002) (citing N.C. Gen. Stat. § 114-2(8)(a) (2001)) (emphasis added) (citations and quotation marks omitted), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628 (2003). Although public trust rights first developed as a common law doctrine, these rights have been recognized in our General Statutes. *See* N.C. Gen. Stat. § 113-131 (2009); *Fabrikant*, 174 N.C. App. at 41, 621 S.E.2d at 27. N.C. Gen. Stat. § 113-131 entitled, "Resources belong to public; stewardship of conservation agencies; grant and delegation of powers; injunctive relief[,]" provides:

(a) The marine and estuarine and wildlife resources of the State belong to the people of the State as a whole. *The Department and the Wildlife Resources Commission are charged with stewardship of these resources.*

(b) The following *powers are hereby granted to the Department and the Wildlife Resources Commission and may be delegated to the Fisheries Director and the Executive Director:*

(1) Comment on and object to permit applications submitted to State agencies which may affect the public trust resources in the land and water areas subject to their respective management duties so as to conserve and protect the public trust rights in such land and water areas;

(2) Investigate alleged encroachments upon, usurpations of, or other actions in violation of the public trust rights of the people of the State; and

(3) Initiate contested case proceedings under Chapter 150B for review of permit decisions by State agencies which will adversely affect the public trust rights of the people of the State or initiate civil actions to remove or restrain any unlawful or unauthorized encroachment upon, usurpation of, or any other viola-

tion of the public trust rights of the people of the State or legal rights of access to such public trust areas.

(c) *Whenever there exists reasonable cause to believe that any person or other legal entity has unlawfully encroached upon, usurped, or otherwise violated the public trust rights of the people of the State or legal rights of access to such public trust areas, a civil action may be instituted by the responsible agency* for injunctive relief to restrain the violation and for a mandatory preliminary injunction to restore the resources to an undisturbed condition. The action shall be brought in the superior court of the county in which the violation occurred. The institution of an action for injunctive relief under this section shall not relieve any party to such proceeding from any civil or criminal penalty otherwise prescribed for the violation.

(d) *The Attorney General shall act as the attorney for the agencies and shall initiate actions in the name of and at the request of the Department or the Wildlife Resources Commission.*

(e) In this section, the term "public trust resources" means land and water areas, both public and private, subject to public trust rights as that term is defined in G.S. 1-45.1.

N.C. Gen. Stat. § 113-131 (emphasis added).

One of plaintiff's requested forms of relief, and the one which the trial court presumably granted, is to have defendant's Dwelling destroyed based on the fact that it is located in a public trust area; plaintiff claims that it is merely addressing a public nuisance and "not attempting to enforce the State's public trust rights[.]" Before the trial court, plaintiff's attorney stated,

> We are not suing in trespass. We are not suing to quiet title. We are not suing to do anything like that. What we are doing is very similar to if someone had put a big house in the middle of the highway in Nags Head, we would consider that a nuisance and we would want it moved out of the road even though that's the DOT's right-of-way. It's the same sort of situation.

We disagree. As to this portion of plaintiff's argument, plaintiff claims it has the right to remove the Dwelling based solely upon public trust rights. This is not a case involving access to the shoreline across pri-

vate property, protecting property which has already been determined to be a public trust area, or a myriad of other such similar situations; this is a case where a governmental agency is attempting to take private property from an individual, destroy the Dwelling, and claim the land on the basis that it currently lies within a public trust area. Plaintiff's analogy regarding the presence of a house in the middle of a highway is not accurate, as in this case the house was already lawfully constructed on its current location prior to the plaintiff's assertion of public trust rights. If a house were lawfully constructed and *then* the State decided to construct a highway through the middle of the house, the State would first have to condemn the property and pay just compensation to the landowner. *See generally Dep't of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 4, 637 S.E.2d 885, 889 (2006) ("The right to take private property for public use, the power of eminent domain, is one of the prerogatives of a sovereign state. The right is inherent in sovereignty; it is not conferred by constitutions. Its exercise, however, is limited by the constitutional requirements of due process and payment of just compensation for property condemned. Both the state and federal constitutions limit the State's power of eminent domain. North Carolina's Constitution protects the rights of property owners through the Law of the Land Clause, which provides that no person shall be deprived of his property, but by the law of the land. In other words, although the State can condemn land for public use, the owner must be justly compensated." (citations, quotation marks, brackets, and ellipses omitted)). Plaintiff does not contest that the Dwelling was originally lawfully constructed in its current location and that the mean high water line has changed to some extent since it was constructed; only the alleged change after the construction of the Dwelling gives rise to plaintiff's asserted rights.[3] Regardless of plaintiff's attempt to argue that nuisance is the basis of its claims, the potential destruction of defendant's Dwelling based upon the claim that it is located within a public trust area is actually an "attempt[] to enforce the State's public trust rights[.]"

Second, we note that the language in *Fabrikant* and *Neuse* heavily emphasizes the sovereignty of the *State* as being the only body which can affirmatively bring an action to assert rights under the public

---

3. We need not address plaintiff's arguments regarding changes in the mean high water line and the location of defendant's Dwelling in reference to it, as plaintiff does not have standing to bring such an argument to enforce rights under the public trust doctrine.

**TOWN OF NAGS HEAD v. CHERRY, INC.**

[219 N.C. App. 66 (2012)]

trust doctrine. *See Fabrikant,* 174 N.C. App. at 41, 621 S.E.2d at 27; *Neuse River Found., Inc.,* 155 N.C. App. at 118-19, 574 S.E.2d at 54. Our case law clearly reflects that affirmative actions regarding public trust property must be taken by the State "through the Attorney General[.]" *Neuse River Found., Inc.,* 155 N.C. App. at 119, 574 S.E.2d at 54; *contrast Fish House, Inc. v. Clarke,* 204 N.C. App. 130, 136-37, 693 S.E.2d 208, 212-13 (determining that an entity besides the State could use the public trust doctrine as a defense in an action, but emphasizing that only the State may use the doctrine offensively), *disc. review denied,* 364 N.C. 324, 700 S.E.2d 750 (2010). Regardless of whether the statements in both *Fabrikant* and *Neuse* were dicta, the clear mandate of N.C. Gen. Stat. § 113-131 is that "[t]he Attorney General shall act as the attorney" "[w]henever there exists reasonable cause to believe that any person or other legal entity has unlawfully encroached upon, usurped, or otherwise violated the public trust rights of the people of the State[.]" N.C. Gen. Stat. § 113-131(c), (d). In addition, it is entirely reasonable to grant this power to the State only, in order to minimize conflicts between municipalities or other local governments and the state agencies which have been granted the responsibility of managing and protecting "public trust rights of the people of the State or legal rights of access to such public trust areas[.]" N.C. Gen. Stat. § 113-131(c).

Just such a conflict between the requirements of state law and the local ordinance seems to exist in this case. *See* N.C. Gen. Stat. § 113-131, Town of Nags Head, N.C., Code § 16-31, –33. As plaintiff's attorney conceded before the trial court, the Attorney General "may be—I don't think that I would disagree that they are probably the only party that can assert an interest in land based on the public trust." An interest in land is exactly what plaintiff seeks here. Plaintiff is not merely seeking public access to the shoreline across defend-ant's property; plaintiff is seeking to demolish defendant's Dwelling and to prevent defendant from making any economic use of the property whatsoever. Because only the *State,* acting through the Attorney General, has standing to bring an action to enforce the *State's* public trust rights in accord with N.C. Gen. Stat. § 113-131, we conclude that this claim must be dismissed. N.C. Gen. Stat. § 113-131; *Neuse River Found., Inc.,* 155 N.C. App. at 119, 574 S.E.2d at 54. Accordingly, we reverse the order of the trial court denying defendant's motion to dismiss pursuant to Rule 12(b)(1).[4]

---

4. As we are dismissing defendant's claim for "abatement" of the alleged public nuisance under the public trust doctrine pursuant to Rule 12(b)(1), we need not address defendant's motion to dismiss pursuant to Rule 12(b)(6).

### III. Personal or Property Injury

**[2]**  Defendant also contends that the trial court erred in granting partial summary judgment in favor of plaintiff based upon Town Ordinance § 16-31(6)(b). Defendant contends that "[t]here is a question of material fact as to whether the cottage posed a likelihood of personal or property injury." Plaintiff contends that it "has produced substantial, material and uncontroverted evidence that the condition of the Cottage can reasonably be determined to be likely to cause personal or property injury." Plaintiff then directs this Court's attention to its verified complaint and two affidavits from Cliff Ogburn ("Mr. Ogburn"), Town Manager.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The standard of review from a grant or denial of summary judgment is de novo. Because summary judgment is a drastic remedy that eliminates the need for a full trial, summary judgment should be granted cautiously.

*Matthews v. Food Lion, LLC,* ____ N.C. App. ____, ____, 695 S.E.2d 828, 830 (2010) (citations and quotation marks omitted).

As we have already noted, plaintiff's verified complaint states that the Town's Manager inspected the Dwelling and concluded:

> a.  That the Dwelling was in a deteriorated and damaged condition;
>
> b.  That the Dwelling was disconnected  from utilities;
>
> c.  That the Dwelling was disconnected from approved means of sewage disposal;
>
> d.  That components of the Dwelling's on-site sewage disposal system were  visibly damaged or missing;
>
> . . . .
>
> h.  That the Dwelling had incurred storm and/or erosion damage[.]

Mr. Ogburn averred that

> 8.  The wave action and tides associated with the November Storm caused significant damage to the [Dwelling].

TOWN OF NAGS HEAD v. CHERRY, INC.

[219 N.C. App. 66 (2012)]

9. Since at least October 6, 2008, the [Dwelling] has been damaged to such an extent that its condition made it unsafe for human habitation and it has been condemned by the Town's building inspector pursuant to N.C.G.S. § 160A-426. The Defendant has not taken any corrective action to remedy the issues with the [Dwelling] which caused [it] to be declared unsafe for human habitation and condemned by the Town's building inspector.

10. Since the November Storm, if not earlier, the [Dwelling] was and remains in a deteriorated, decaying and damaged condition which includes, but is not limited to, having unsupported decking, missing exterior stairways or other means of ingress and egress, having weakened or failing structural components or other portions of the [Dwelling] which could injure passersby or their property without warning.

11. Since the November Storm, if not earlier the dilapidated condition of the [Dwelling] has caused or contributed to blight, is dangerous to children, and has attracted persons intent on criminal activities or other nuisance activities.

. . . .

13. Since the November Storm, if not earlier, the Cottage was and remains disconnected from electricity, water service and other utilities.

14. Since the November Storm, if not earlier, the [Dwelling] was and remains disconnected from any form of sewage disposal, approved or otherwise.

15. Since the November Storm, if not earlier, the [Dwelling] had and continues to have components of its on-site sewage disposal system which are damaged, destroyed, missing or otherwise rendered inoperable.

16. Since the November Storm, if not earlier, the [Dwelling] had components of its on-site sewage disposal system which were visible and accessible to the public causing blight and causing the public to have concern over whether the Atlantic Ocean in the vicinity of the Property could be enjoyed safely.

. . . .

22. Since the November Storm, if not earlier, the [Dwelling] has been and remains completely blocking public or emergency vehicle access to and travel along the ocean beaches.

. . . .

27. Due to the condition and location of the [Dwelling], each such weather event has the immediate potential to cause additional erosion and storm damage to the Property and the [Dwelling] and thereby to create an increased risk of injury or danger to the citizens, residents and visitors of the Town and their property by causing all or part of the [Dwelling] to collapse, fall or otherwise become an instrument of destruction or a dangerous projectile.

28. This risk of imminent damage, destruction and danger extends beyond the weather event itself as portions of structures such as the [Dwelling] remain in the Atlantic Ocean and on the ocean beaches causing continued and dangerous conditions for those members of the public exercising their rights to enjoy the Atlantic Ocean and ocean beaches.

. . . .

30. The condition and location of the [Dwelling] significantly interferes with the public health, the public safety, the public peace, the public comfort and the public convenience.

Mr. Ogburn's second affidavit stated that the statements in his first affidavit "remain true and accurate[, and t]o the extent conditions have changed on the Property, they have changed in a manner showing further deterioration of the [Dwelling] and further erosion of the Property."

On the other hand, Lance Goldner ("Mr. Goldner"), president of defendant, averred in his affidavit that:

5. On November 12-14, 2009, the Property was affected by wave action resulting from what is now known as Nor'Easter Ida. As a result of this wave action, the [Dwelling] on the Property lost its wooden access steps, the drain lines for its septic field, and also lost its electrical and water connections. Otherwise the [Dwelling] is in habitable condition and is not suffering from any structural defects that would make it unsafe.

. . . .

7. . . . I have been making efforts to have the [Dwelling] repaired, but these efforts have been blocked by the Town.

8. I attempted to obtain a building permit to repair the [Dwelling], but was told by Town officials that I would first need to obtain a CAMA permit, which is also issued by the Town.

9. I obtained an Improvement Permit from the Dare County Health Department to repair the septic system . . . .

10. I sought a CAMA permit from the Town for repair of the septic system, and was denied on November 22, 2010 on the purported basis that my repair of the septic field constituted a "replacement" of the system. . . .

11. The septic tank on the property is not cracked and can be reused and only needs to be buried in the ground. Otherwise all that is needed is to reinstall the septic drain lines . . . .

Furthermore, we note that when plaintiff issued its "Declaration of Nuisance Structure, Order of Abatement and Warning Citation" to defendant it stated, "No development permits will be issued for this structure." Thus, plaintiff's own evidence lends credence to Mr. Goldner's statement that he has attempted to repair the Dwelling but has been prevented from doing so by plaintiff.

In summary, Mr. Ogburn averred that

the [Dwelling] was and remains in a deteriorated, decaying and damaged condition which includes, but is not limited to, having unsupported decking, missing exterior stairways or other means of ingress and egress, having weakened or failing structural components or other portions of the [Dwelling] which could injure passersby or their property without warning.

In contrast, Mr. Goldner claimed that "the cottage is in habitable condition and is not suffering from any structural defects that would make it unsafe[,]" and plaintiff has refused to allow defendant to make repairs which are needed.

Viewing the evidence in the light most favorable to defendant, as we must for purposes of summary judgment, *Fairfield Harbour Property Owners Ass'n, Inc.*, ___ N.C. App. at ___, 715 S.E.2d at 281, it appears that the main defects in the dwelling are the lack of con-

nections to a septic tank, electricity, and water and some exterior damage to stairs, but it is structurally sound and in need of relatively minor repairs, which defendant would have promptly performed if plaintiff had not refused to issue the required permits. Mr. Ogburn's first affidavit, in paragraphs 27 and 28, also seems to rely heavily on the risk that *future* storm events will cause more damage to the Dwelling and it will then pose a greater danger; yet these statements express his opinion about what may happen in the future, and certainly if a future storm event does further undermine the Dwelling, plaintiff may seek relief on the basis of this new condition.

Town Ordinance § 16-31(6)(b) does not state that any possibility "of personal or property injury" created by the condition of the Dwelling is a violation, but instead a "reasonabl[e] . . . likelihood" of injury. Town of Nags Head, N.C., Code § 16-31(6)(b). Although this is not a negligence case, the determination of what is reasonably likely to cause "personal or property injury", *id.*, either now or in the future, is similar to the determination of negligence, which also requires a determination of reasonableness; summary judgment is rarely appropriate "in a negligence case in which a jury ordinarily applies the reasonable person standard to the facts of each case." *See generally Williams v. Power & Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979). In this case, there is a material question of fact as to whether the condition of the Dwelling creates a "reasonabl[e] . . . likelihood of personal or property injury" and the evidence forecast by the parties is conflicting. Town of Nags Head, N.C., Code § 16-31(6)(b); *see Matthews*, ___ N.C. App. at ___, 695 S.E.2d at 830. In addition, if defendant were allowed to repair the Dwelling, as Mr. Goldner's affidavit states that it would have done if not prevented by plaintiff, the Dwelling may not pose any risk of "personal or property injury[.]" Town of Nags Head, N.C., Code § 16-31(6)(b). Accordingly, the trial court erred in granting summary judgment in favor of plaintiff.

### IV. Conclusion

For the foregoing reasons, we reverse the trial court's order denying defendant's motion to dismiss pursuant to Rule 12(b)(1) and reverse the trial court's partial summary judgment order and remand for further proceedings consistent with this opinion solely as to the issue of whether the Dwelling is a nuisance under Town Ordinance § 16-31(6)(b) and if so, to determine appropriate relief.

**IN RE OCEAN ISLE PALMS, LLC**

[219 N.C. App. 81 (2012)]

REVERSED and REMANDED in part.

Judges STEPHENS and BEASLEY concur.