**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-1537**

_____

TOWN OF NAGS HEAD,

                    Plaintiff – Appellee,

          v.

MATTHEW A. TOLOCZKO; LYNN B. TOLOCZKO,

                    Defendants – Appellants.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Elizabeth City.   James C. Dever
III, Chief District Judge.  (2:11-cv-00001-D)

_____

Argued:  May 17, 2013          Decided:  August 27, 2013

_____

Before SHEDD, DAVIS, and DIAZ, Circuit Judges.

_____

Reversed and remanded by published opinion.   Judge Diaz wrote
the opinion, in which Judge Shedd and Judge Davis joined.

_____

**ARGUED:** J. David Breemer, PACIFIC LEGAL FOUNDATION, Sacramento,
California, for Appellants. Charles Everett Thompson, II,
THOMPSON & PUREZA, Elizabeth City, North Carolina, for Appellee.
**ON BRIEF:** William J. Brian, Jr., Keith P. Anthony, MORNINGSTAR
LAW GROUP, Morrisville, North Carolina, for Appellants.  David
R. Pureza, THOMPSON & PUREZA, P.A., Elizabeth City, North
Carolina, for Appellee.

_____

DIAZ, Circuit Judge:

We heard argument in this case in concert with the related appeal of Sansotta v. Town of Nags Head, ___ F.3d ___, No. 12-1538, 2013 WL 3827471 (4th Cir. 2013).  Both suits involve a slew of federal and state law claims concerning the legality of efforts by the Town of Nags Head, North Carolina (the "Town"), to declare beachfront properties that encroach onto "public trust lands" a nuisance, and regulate them accordingly.  The district court adjudicated the claims in Sansotta, but concluded here that it was inappropriate for a "federal court to intervene in such delicate state-law matters," Town of Nags Head v. Toloczko, 863 F. Supp. 2d 516, 519 (E.D.N.C. 2012), and therefore abstained from decision under Burford v. Sun Oil Co., 319 U.S. 315 (1943).

Mindful that the abnegation of federal jurisdiction is a serious measure to be taken only under "extraordinary and narrow" circumstances, Martin v. Stewart, 499 F.3d 360, 370 (4th Cir. 2007), we conclude that the circumstances of this case do not merit abstention.  While the claims asserted here do involve a sensitive area of North Carolina public policy, resolving them is not sufficiently difficult or disruptive of that policy to free the district court from its "unflagging obligation to exercise its jurisdiction."  In re Mercury Constr. Corp., 656 F.2d 933, 943 (4th Cir. 1981) (en banc) (internal quotation

2

marks omitted).  We therefore reverse the district court's decision to abstain, and remand for further proceedings.


                                I.

    The Town of Nags Head is a coastal municipality that has the Atlantic Ocean as its eastern boundary.  Its beaches have historically been used by the public for transportation and recreational activities.  These activities enjoy legal protection under the "public trust doctrine," which entitles states like North Carolina to appropriate title to tidal lands in trust for the public.  See Gwathmey v. State Through Dep't of Env't, Health, & Natural Res., 464 S.E.2d 674, 677 (N.C. 1995).

    Various natural indicators can demarcate public trust lands from private property.  Although the vagaries of beach topography make it difficult to delineate a fixed boundary, the Town and North Carolina both define the relevant area as "seaward of the mean high water mark."[1]  Town of Nags Head, N.C., Code of Ordinances, § 48-7; see also N.C. Gen. Stat. § 77-20(e).

    Historically, prevailing environmental conditions have pushed the high tide line westward from the Atlantic Ocean, resulting in erosion and the gradual migration of private

---

    [1] The mean high water mark is the average of all high tide elevations measured over a nineteen-year period.

3

beachfront property into public trust lands. To combat this trend, beachfront owners like Matthew and Lynn Toloczko[2] have periodically restored displaced sand and have raised the height of their cottages by sixteen feet to endure tidal surges. In the event of storm damage, the Toloczkos obtained permits from the Town to make all necessary repairs.

A few years ago, however, the Town determined that certain beachfront properties were beyond rehabilitation because they were located within public trust lands. The Town therefore resolved to demolish these structures through enforcement of its Nuisance Ordinance, which regulates "[a]ny structure, regardless of condition . . . located in whole or in part in a public trust area or public land." Town of Nags Head, N.C., Code of Ordinances, § 16-31(6)(c).

When a tropical storm inflicted serious damage on the Toloczkos' cottage in November 2009, the Town condemned the structure and sent the Toloczkos a "Declaration of Nuisance." The Town refused to allow the Toloczkos to abate any nuisance by acquiring a permit to make repairs. The Town also began to assess daily fines to compel the Toloczkos to demolish the structure.

---

[2] The Toloczkos have owned a beachfront cottage in the Town since 1992.

4

The Toloczkos refused to raze their cottage, and the Town sued them in North Carolina state court, seeking to collect the assessed civil fines and demolish the cottage. The Toloczkos removed the case to federal court based on diversity of citizenship.

After removal, the Toloczkos filed twenty-one counterclaims alleging violations of state and federal law. The bulk of the counterclaims sought related, if not duplicative, declaratory judgments that the Town acted unlawfully by enforcing the public trust doctrine through its Nuisance Ordinance. The Toloczkos also sought injunctive relief and money damages for violations of state and federal law.

During the course of the litigation, the Town amended its Zoning Ordinance to prohibit any structure if located: "(1) Wholly within the wet sand area of the public trust beach area, i.e. on the state owned property seaward of the mean high water mark;" or "(2) Wholly or partially within any portion of the public trust beach area in such a manner that the building or structure impedes the flow of vehicular, pedestrian, or emergency services traffic at normal high tide." Town of Nags Head, N.C., Code of Ordinances § 48-87. The amended ordinance also forbids the issuance of building and repair permits for structures located on public trust lands.

5

In the meantime, a North Carolina beach replenishment initiative added substantial sand seaward of the cottage, prompting the Town to inform the Toloczkos that it no longer considered their cottage a nuisance. The Town subsequently offered the Toloczkos the opportunity to procure new permits to repair the cottage.[3] To repair the cottage, however, the Toloczkos needed to petition the North Carolina Department of Environment and Natural Resources (CAMA) for approval to obtain a local permit to replace their damaged septic tanks. CAMA denied the permit due to the cottage's location within an "Area of Environmental Concern" and "comments from the Town of Nags Head indicating that the proposal has been deemed to be currently inconsistent with the Code of Ordinances of the Town of Nags Head." J.A. 391. Accordingly, the parties continued the litigation.

------

[3] We do not think this affects our jurisdiction, as "voluntary cessation of a challenged practice" moots an action only if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000). Here, the Town maintains that the cottage resides in the public trust area, and Town Manager Cliff Ogburn conveyed that he "could . . . still declare--redeclare [the Toloczkos'] cottage to be a nuisance." J.A. 180-81. Under these conditions it is not clear--certainly not "absolutely"--that the asserted injury will not recur. In fact, given Ogburn's statements, and the fluctuating terrain of the beachfront, "there is a reasonable expectation that the [Toloczkos] will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998).

The district court, however, declined to decide the case. Invoking the Burford doctrine of abstention, the court noted "the danger of federal interference with unsettled, important policy matters reserved to the states," and determined that "land use is an important public policy that lies within the prerogative of a sovereign state." Toloczko, 863 F. Supp. 2d at 525. Because the dispute involved "profound, unresolved state-law issues that transcend the case at hand," id. at 529, the court exercised its discretion to decline federal jurisdiction.[4] This appeal followed.

---

[4] Where--as here--claims for discretionary relief are removed to federal court and a district court decides to abstain, the court should "remand" rather than "dismiss" the claims. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996). Similarly, federal courts may only abstain from claims for discretionary relief, i.e., declaratory and equitable actions, while claims for damages may be stayed but not dismissed or remanded. See id. at 730. Here, the district court stayed the Toloczkos' 42 U.S.C. § 1983 claim (counterclaim sixteen), inverse condemnation claim (counterclaim nineteen), slander of title claim (counterclaim twenty), and negligence claim (counterclaim twenty-one). Additionally, the court dismissed the Toloczkos' regulatory takings claim (counterclaim eighteen) on ripeness grounds. The Toloczkos raise no argument in their opening brief as to their state law claims for slander of title and negligence, and therefore have waived appellate review of the district court's decision to stay those claims.

As for the Town's claims in the complaint, the district court concluded that the Town's withdrawal of the Nuisance Declaration mooted the state law abatement actions (counts I and II). The district court also stayed the claim to collect the civil fines (count III).

II.

A.

We review a district court's decision to abstain for abuse of discretion, "ever mindful that, although the standard is a deferential one, the discretion to abstain is tempered by the truism that 'the federal courts have a virtually unflagging obligation to exercise their jurisdiction.'" MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 280 (4th Cir. 2008) (internal quotations omitted).

The Burford abstention doctrine relaxes the otherwise "unflagging" mandate of Article III when an adjudication may undermine the "independence of state action" on issues that are local and important to a state's sovereignty. Quackenbush, 517 U.S. at 728. In this way, the doctrine advances federal and state comity by permitting courts to abstain where "an incorrect federal decision might embarrass or disrupt significant state policies." Nature Conservancy v. Machipongo Club, Inc., 579 F.2d 873, 875 (4th Cir. 1978) (per curiam).

Burford involved a Fourteenth Amendment challenge to the Texas Railroad Commission's grant of an oil-drilling permit. Because Texas had devised an intricate regime of judicial review that fostered "a specialized knowledge" in a complex and "ever-changing" area of the law, the Supreme Court concluded that federal interference would wreak "[d]elay, misunderstanding of

8

local law, and needless federal conflict with the State policy."

Burford, 319 U.S. at 327. "Under such circumstances," the Court held, "a sound respect for the independence of state action requires the federal equity court to stay its hand." Id. at 334.

The Supreme Court has since "carefully defined the areas in which such abstention is permissible," Martin, 499 F.3d at 363, specifying two contexts in which the Burford doctrine applies:

> (1) [W]hen there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI), 491 U.S. 350, 361 (1989) (internal quotations omitted).

B.

We first consider whether the district court correctly abstained from resolving the claims for declaratory relief (counterclaims one through fifteen, and seventeen) asserted by the Toloczkos. The gravamen of these counterclaims concerns the Town's authority to ratify and enforce an ordinance that regulates structures on public trust lands. We have traditionally viewed questions of state and local land use and zoning law as the paradigm of Burford abstention, calling them

9

"a classic example of situations in which the exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Pomponio v. Fauquier Cnty. Bd. of Supervisors, 21 F.3d 1319, 1327 (4th Cir. 1994) (en banc) (internal quotations omitted), abrogated in part on other grounds by Quackenbush, 517 U.S. at 728-31. "While zoning and land use cases do not automatically warrant Burford abstention," Wash. Gas Light Co. v. Prince George's Cnty. Council, 711 F.3d 412, 419 (4th Cir. 2013), our precedent demonstrates that these cases characteristically meet the Burford abstention criteria.[5]

The instant case would seem to fit the trend, as the litany of state and federal law counterclaims lodged by the Toloczkos appear to invite a federal court to decide (1) the legal authority of the Town to enforce North Carolina's public trust

---

[5] See id. (Maryland "mandatory referral statute" governing public utilities compliance with municipal zoning laws); MLC Auto., 532 F.3d at 283 (claim that town rezoning violated vested rights and constitutional due process); Pomponio, 21 F.3d at 1320-21 (challenge to application of local zoning ordinance); Palumbo v. Waste Tech. Indus., 989 F.2d 156, 159-60 (4th Cir. 1993) (challenge to local waste management permitting scheme); Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal, 945 F.2d 760, 763-64 (4th Cir. 1991) (annexation and sewer services); Browning-Ferris, Inc. v. Balt. Cnty., 774 F.2d 77, 79 (4th Cir. 1985) (complex state regulations governing landfill operations); Caleb Stowe Assocs., Ltd. v. Cnty. of Albemarle, Va., 724 F.2d 1079, 1080 (4th Cir. 1984) (challenge to "authority of local planning bodies and Boards of Supervisors").

doctrine through its Nuisance Ordinance, and (2) whether the Toloczkos' cottage is subject to that ordinance. Both questions risk an "interference with the State's or locality's land use policy," Pomponio, 21 F.3d at 1328, which might "disrupt the State's attempt to ensure uniformity in the treatment of an essentially local problem," NOPSI, 491 U.S. at 362 (internal quotations omitted). This is especially true for the claims that request a determination that the cottage is not located in the public trust area,[6] as it would obviously offend federalism and comity for a federal court to physically delimit the metes and bounds of a state's sovereign lands. See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 283 (1997) ("State ownership of [submerged lands] has been considered an essential attribute of sovereignty.").

If this were the end of the matter, we would not hesitate to affirm the district court's abstention under Burford. But

---

[6] In this task, a court would have no guidance. The scope of the public trust common law doctrine remains the exclusive province of the North Carolina courts to define, see N.C. Gen. Stat. § 77-20(d) ("These public trust rights in the ocean beaches are established in the common law as interpreted and applied by the courts of this State."), and they have consistently declined the opportunity to do so in the context of beachfront property. See Cooper v. United States, 779 F. Supp. 833, 835 (E.D.N.C. 1991) ("The extent to which the public trust doctrine applies to dry sand property in North Carolina is an unsettled question."); Concerned Citizens of Brunswick Cnty. Taxpayers Ass'n v. State ex rel. Rhodes, 404 S.E.2d 677, 688 (N.C. 1991).

11

here the district court is not required to sail into these uncharted waters because North Carolina law is clear that the Town has no authority to enforce the public trust doctrine in the first place.  See Town of Nags Head v. Cherry, Inc., 723 S.E.2d 156, 161 (N.C. Ct. App.), disc. review denied, 733 S.E.2d 85, 85-86 (N.C. 2012); Fabrikant v. Currituck Cnty., 621 S.E.2d 19, 27 (N.C. Ct. App. 2005); Neuse River Found., Inc. v. Smithfield Foods, Inc., 574 S.E.2d 48, 54 (N.C. Ct. App. 2002), disc. review denied, 577 S.E.2d 628 (N.C. 2003).

In Cherry, a case nearly identical to ours, the Town filed a state court abatement action claiming that a physical structure occupied public trust lands, and therefore was subject to its Nuisance Ordinance.  723 S.E.2d at 157-59.  The Court of Appeals of North Carolina dismissed the suit for lack of standing, holding that "only the State, acting through the Attorney General, has standing to bring an action to enforce the State's public trust rights."  Id. at 161.

In light of this clear statement of North Carolina law, the instant counterclaims neither present "difficult questions of state law" regarding North Carolina public trust lands nor "disrupt[] . . . state efforts to establish a coherent policy with respect" to this important policy.  NOPSI, 491 U.S. at 361. As to the first point, the Town's lack of standing to enforce the public trust doctrine obviates any difficult state law

12

questions. The district court recognized this principle, but stated that the "issue was far from settled" and that it was "not prepared to say whether the North Carolina Court of Appeals accurately has predicted how the Supreme Court of North Carolina would (or will) rule on the issues in controversy in Cherry." Toloczko, 863 F. Supp. 2d at 528 n.6.

At this juncture, however, we are prepared to make such a statement given that the Supreme Court of North Carolina declined discretionary review during the pendency of this appeal, see Cherry, 733 S.E.2d at 85-86, as it did the first time it had the opportunity to decide which entities have legal standing to press public trust rights, see Neuse River, 577 S.E.2d at 628.

Because "North Carolina currently has no mechanism for us to certify questions of state law to its Supreme Court," MLC Auto., 532 F.3d at 284, we (and the district court) must "follow the decision of an intermediate state appellate court unless there is 'persuasive data' that the highest court would decide differently." United States v. Little, 52 F.3d 495, 498 (4th Cir. 1995) (internal quotations omitted). Given the Supreme Court of North Carolina's decision not to review Cherry, the district court no longer has cause to abstain over the counterclaims that depend on the Town's authority to enforce section 16-31(6)(c) of the Nuisance Ordinance.

13

Nor would deciding this case in federal court disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." NOPSI, 491 U.S. at 361. Here it is the Town, not the federal courts, that has interfered with North Carolina's governance of public trust lands. In fact, as Cherry explained, "it is entirely reasonable to grant [the] power [to enforce the public trust doctrine] to the State only, in order to minimize conflicts between municipalities or other local governments and the state agencies which have been granted the responsibility of managing and protecting public trust rights." Cherry, 723 S.E.2d at 161 (internal quotations omitted). Because North Carolina law already bars the Town from enforcing its Nuisance Ordinance on the facts before us, no principle of abstention should preclude a federal court from saying so.

We will not call the district court's decision an abuse of discretion because the controlling state law, which had not been established at the time of the abstention, "is now clear and certain." Martin, 499 F.3d at 366. It suffices to say that because the balance of federal and state interests has changed with intermediate developments in state court precedent, "continued abstention at this point would be inappropriate." Front Royal, 135 F.3d at 283.

14

C.

We next address whether the district court properly abstained from deciding the Toloczkos' claim under 42 U.S.C. § 1983 alleging due process and equal protection violations (counterclaim sixteen).  We conclude that the district court need not abstain.  While this constitutional claim intersects with the Town's land use and zoning laws, it is not merely "state law in federal law clothing."  Johnson v. Collins Entm't Co., 199 F.3d 710, 721 (4th Cir. 1999).  We also agree with the Toloczkos that a court need not define the geographical reach of the public trust doctrine to resolve their constitutional claim. In fact, the district court decided an analogous claim in Sansotta without offense to North Carolina's land use or zoning law.  We are confident the court can do the same here.


III.

Finally, we review the district court's dismissal of the Toloczkos' regulatory takings claim and its decision to stay the inverse condemnation claim (counterclaims eighteen and nineteen).  The Toloczkos allege here that the Town stripped their property of all viable economic use by declaring their cottage a nuisance and forbidding the issuance of any permits to repair the structure.

15

The Fifth Amendment forbids the taking of private property "for public use, without just compensation." U.S. Const. amend. V. The Takings Clause applies to the states, see Chicago, B & Q.R. Co. v. Chicago, 166 U.S. 226 (1897), and to takings in the form of government regulations that effectively deprive a property of all economic value, see Henry v. Jefferson Cnty. Comm'n, 637 F.3d 269, 276 (4th Cir. 2011). "It is also clear that temporary, but total, regulatory takings are compensable." Front Royal, 135 F.3d at 285.

However, where "a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985). The district court dismissed the regulatory takings claim as unripe under this state-litigation requirement, as the Toloczkos failed to obtain an inverse condemnation adjudication--the relevant state law remedy--in state court before removal to federal court.

The Williamson County ripeness doctrine "does not preclude state courts from hearing simultaneously a plaintiff's request for compensation under state law and a claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution." San Remo Hotel, L.P. v.

16

City & Cnty. of S.F., Cal., 545 U.S. 323, 346 (2005). But to satisfy Williamson County, plaintiffs must not only file a state law inverse condemnation claim--they must also be "denied just compensation" through a final adjudication in state court. 473 U.S. at 195.

In this case, the Toloczkos removed their regulatory takings claim to federal court before a North Carolina court could grant or deny a correlative state-law remedy. Unlike in Sansotta, ___ F.3d ___, slip op. at 21, where we held that the Town waived the state-litigation requirement by removing the case to federal court, here the Toloczkos preempted their own state law remedy. Where a plaintiff's failure to satisfy Williamson County results from their own litigation strategy, rather than the defendant's "procedural gamesmanship" or forum manipulation, id. at 29, Sansotta's waiver principle does not apply.

But "[b]ecause Williamson County is a prudential rather than a jurisdictional rule, we may determine that in some instances, the rule should not apply and we still have the power to decide the case." Id. at 24. Exercise of such discretion may be particularly appropriate to avoid "piecemeal litigation or otherwise unfair procedures." San Remo Hotel, 545 U.S. at 346 (internal quotations omitted).

17

This is a proper case to exercise our discretion to suspend the state-litigation requirement of <u>Williamson County</u>. In the interests of fairness and judicial economy, we will not impose further rounds of litigation on the Toloczkos. We therefore remand both the federal and state law takings claim to the district court.

IV.

For the foregoing reasons, we reverse the district court's decision to abstain and remand for further proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>